## 60296. JONES v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.

CARLEY, Judge.

On May 18, 1977, plaintiff-appellant William Jones applied for "no-fault" automobile insurance with defendant-appellee State Farm Mutual Insurance Company (State Farm) through Ronnie Harden, an agent of State Farm. Harden completed the application form, and Jones signed the form in the single space provided thereon for his signature.

In November, 1977, Jones applied for another, less expensive no-fault policy with State Farm. Harden again prepared the application form, and Jones again signed the form in the only space provided for the applicant's signature. While the evidence is in dispute as to whether Harden ever supplied Jones with a copy of either application, copies of the applications included in the record of this case affirmatively disclose that Jones made no marks on the applications other than his signature in the single space provided.

On April 24, 1978, Jones was injured when his car was run off the road by a tractor trailer truck. Several days later, Jones visited Harden's office to inquire about filing a claim under his no-fault policy with State Farm, but was told by Harden that his policy did not

cover collision claims. State Farm contends that Jones never mentioned his physical injuries to Harden while Jones argues that State Farm unequivocally told him that it would not provide assistance for *any* claims which he might have had as a result of the mishap including personal injury claims.

Jones consulted a local attorney concerning his coverage. On March 2, 1979, Jones' attorney sent a letter to Harden enclosing schedules of Jones' medical expenses and lost-wages and requesting assistance in collecting benefits under Jones' no-fault policy. This letter was answered on March 15, 1979, by a claims representative for State Farm. An Application for Benefits form was enclosed with the directions that Jones complete the form and return it, "along with any medical bills you may have in your file."

On March 19, 1979, the completed form was returned to the claims representative, enclosing photocopies of all medical bills incurred by Jones as a result of the incident of April 24, 1978. Almost six weeks later, on May 2, 1979, drafts in the amounts of $5,000 and $1,441.46 were sent in settlement of Jones' no-fault claim. After consultation between Jones and his attorney, the drafts were returned on May 8, 1979, to the claims representative, who was informed that the drafts would not be accepted in complete settlement of Jones' claim. On June 6, 1979, two replacement drafts in the amounts of $5,000 and $4,289.46 were forwarded as full payment of Jones' claims for lost wages and medical bills. Jones' counsel accepted and cashed the drafts on behalf of Jones, but stated in a subsequent letter to the claims representative dated June 7, 1979, that the drafts were being accepted as *partial payments only* of Jones' no-fault claims.

Further negotiations between the parties were unsuccessful, and Jones filed suit against State Farm on July 25, 1979. In Count I of his complaint Jones sought recovery of attorney fees and punitive damages under Code Ann. § 56-3406b for State Farm's allegedly late payments of his benefits. In Count II he sought recovery of sums which would only be available under the *optional* no-fault personal injury coverages which were not included in his policy. Before trial, Jones moved for partial summary judgment on both counts. His motions were opposed and countered by motions for summary judgment filed by State Farm. The trial court denied Jones' motions and granted State Farm summary judgment as to both counts of Jones' complaint. Jones brings the instant appeal from the trial court's disposition of the various motions for summary judgment.

1. In his first four enumerations of error Jones contends that the trial court erred in denying his motion for partial summary judgment on Count II of his complaint and in granting State Farm's motion for

summary judgment on the same count.

The essence of Jones' averments in Count II of the complaint is that State Farm, through its agent, Ronnie Harden, failed to inform Jones of the optional no-fault coverages available to him at the times he made application for coverage with State Farm. To this end Jones argues that State Farm failed to comply with the provisions of Code Ann. § 56-3404b (b), which states as follows: "Each application for a policy of motor vehicle liability insurance sold in this State must contain *separate spaces* for the insured to indicate his acceptance or rejection of each of the optional coverages listed in subsection (a) above and no such policy shall be issued in this State unless these spaces are completed and signed by the prospective insured." (Emphasis supplied.) Jones contends that he was never informed of the optional coverages available to him under the particular State Farm no-fault policy which he purchased, and that State Farm violated Code Ann. § 56-3404b (b) because the application did not provide and he did not sign "separate spaces for the insured to indicate his acceptance or rejection" of optional coverages. In opposition, State Farm asserts that Jones was fully informed of all available optional no-fault coverages, that Jones knowingly refused to accept any of the optional coverages, that Jones evidenced this refusal by signing the application, and that Code Ann. § 56-3404b (b) cannot be construed to require an application for no-fault insurance to contain separate spaces beside all of the available optional coverages, each of which must be signed by the applicant.

The question thus presented for resolution appears to be one of first impression in this state: To what extent does Code Ann. § 56-3404b (b) impose a burden on no-fault insurers to obtain specific written acceptance or rejection from each applicant of each optional coverage listed in Code Ann. § 56-3404b (a)?

The legislative intent underlying the enactment of Code Ann. § 56-3404b is clear. The language of the statute is phrased in unequivocal terms: "Each insurer *shall* also make available . . . the following coverage;" "Each application . . . *must contain separate spaces* for the insured to indicate his acceptance or rejection of each of the optional coverages listed in subsection (a) above." (Emphasis supplied.) This mandatory language leaves no doubt that the General Assembly placed strong significance upon compelling insurers to offer no-fault coverages over and above the minimum basic coverage. The language used in Code Ann. § 56-3404b further enunciates the clear legislative mandate that insurers offer optional coverages to applicants for no-fault insurance *and* that an applicant's waiver of his privilege to obtain optional coverages be made knowingly *and in writing.*

We construe Code Ann. § 56-3404b as imposing an evidentiary burden upon no-fault insurers to demonstrate that optional coverages were expressly offered to, and knowingly accepted or rejected in writing by, each of their applicants for no-fault insurance. This evidentiary burden is satisfied if and when an insurer can demonstrate that its applicants completed and signed separate spaces on the no-fault insurance application form indicating their acceptance or rejection of each of the optional coverages listed in Code Ann. § 56-3404b (a). If the application does not conform to the requirements of Code Ann. § 56-3404b (b), the insurer can meet its evidentiary burden by showing that it otherwise provided its no-fault insureds with "an opportunity to accept or reject, in writing, the optional coverages required to be offered under [Code Ann. § 56-3404b (a)]" in compliance with the provisions of Code Ann. § 56-3404b (c), and that the optional coverages were then effectively rejected.

In the instant case State Farm did not obtain Jones' signature in "separate spaces" on the applications for no-fault insurance indicating either his acceptance or rejection of each of the requisite optional coverages. While State Farm offered the deposition testimony of its agent, Ronnie Harden, to prove that Jones had been informed of the optional coverages and had knowingly rejected these coverages, Code Ann. § 56-3404b clearly sets out the requirements that the application contain "separate spaces" and that an applicant's rejection of optional no-fault coverages must be *in writing* as evidenced by his signature on "separate spaces." State Farm has consequently failed to carry its burden of proof in rebutting Jones' claim that he was never offered optional coverages. See, e.g., Unigard Security Ins. Co. v. Schaefer, 572 SW2d 303 (6) (Tex. S. Ct. 1978). The trial court's grant of summary judgment to State Farm on Count II of Jones' complaint was, therefore, erroneous.

However, Jones' motion for partial summary judgment on the same count was properly denied. Had Jones' motion been granted, the effect would have been a judgment reforming Jones' insurance contract with State Farm so as to retroactively provide Jones with optional no-fault coverages thereby making State Farm liable to Jones for benefits payable under these coverages. This form of relief was not available in the context of the procedural and substantive posture of this case. Under the provisions of Code Ann. § 56-3404b (c), "all named insureds in existing motor vehicle liability policies who have not previously responded to an offer to accept or reject the optional coverages required to be offered by this Chapter shall be given an opportunity to accept or reject, in writing, the optional coverages required to be offered under this section: Provided,

however, that the failure of an insured to notify his insurer of his written acceptance or rejection within 30 days after written notice of the offer has been mailed by the insurer, postage prepaid, by first class mail to the address stated in the policy, shall constitute a rejection of the optional coverage." This statute contemplates that insureds who have not had an opportunity to accept or reject the optional no-fault coverage required to be offered under Code Ann. § 56-3404b (a) are deemed to have been given a "continuing" offer of such coverage from the date of the issuance of the liability policy until 30 days after being given the opportunity in writing to accept or reject the coverage. As concluded above, there remains a factual question as to the receipt by Jones of the notice contemplated by Code Ann. § 56-3404b (c). However, assuming that Jones did not receive such notice, he would, in our opinion, be entitled to "accept" this offer, tender the premiums and enforce the resulting contract. Until that time, however, there is no contract for optional no-fault coverage to "reform." Cf. *Hartford Acc. & Indem. Co. v. Walka Mountain Camp,* 224 Ga. 194 (160 SE2d 833) (1968). "Reformation as applied to a contract is a remedy cognizable in equity for the purpose of correcting an instrument so as to make it express the true intention of the parties, where from some cause, such as fraud, accident, or mistake, it does not express such intention. The remedy is not available for the purpose of making a new and different contract for the parties, but is confined to establishment of the actual agreement." *Deck v. Shields,* 195 Ga. 697, 701-702 (25 SE2d 514) (1943).

2. Jones further contends that the trial court erred in denying his motion for partial summary judgment and in granting summary judgment to State Farm on Count I of his complaint, in which he sought recovery of punitive damages and attorney fees for State Farm's allegedly late payments of his benefits. We agree that summary judgment was erroneously granted to State Farm, but hold further that the trial court properly denied Jones' motion.

Neither party disputes the fact that Jones' attorney sent to State Farm on March 19, 1979, a properly completed Application for Benefits, a statement of Jones' earnings for the 52-week period prior to his accident, a schedule of Jones' medical bills and photocopies of all such bills. Nor is there disagreement concerning the fact that Jones did not receive the first payment of his benefits until May 2, 1979, which payment was rejected as insufficient. The only point on which the parties disagree concerns the date of commencement of the 30/60 day period for payment of no-fault benefits as set out in Code Ann. § 56-3406b.

Code Ann. § 56-3406b (b) states in part as follows: "Benefits required to be paid without regard to fault shall be payable monthly

as loss accrues. Such benefits are overdue if not paid *within 30 days after the insurer receives reasonable proof of the fact and the amount of loss sustained.*" (Emphasis supplied.) State Farm argues that the date of receipt of "reasonable proof of the fact and the amount of loss" from which the 30/60 day period begins to run must be interpreted as the date on which an insurer receives proof of the *validity* of its insured's claim from those persons to whom the insurer had sent inquiries concerning the claim. Jones asserts that the date of receipt by the insurer of "reasonable proof" should be construed as the date upon which the insurer receives proof *from its insured* supporting the insured's claim.

We reject State Farm's interpretation of the "receipt of reasonable proof" requirement in Code Ann. § 56-3406b (b). Under the construction advanced by State Farm, claimants for benefits under no-fault policies would effectively be precluded from taking action against insurers guilty of dilatory processing of no-fault claims. We refuse to give Code Ann. § 56-3406b (b) such a restrictive construction in light of the clear legislative intent underlying that Code section to provide holders of no-fault insurance policies with a means to encourage prompt disposition of their claims.

We hold that the date on which an insurer should be deemed to have received "reasonable proof of the fact and the amount of loss sustained" by its insured is that date upon which the insurer receives sufficient proof *from the insured* to enable the insurer to verify or disprove, through the exercise of reasonable diligence, the basic components of the insured's claim. Thus, in the case at bar, the date upon which the 30/60 day period set out in Code Ann. § 56-3406b (b) commenced was the date upon which State Farm received Jones' properly completed Application for Benefits, along with the other materials enclosed in that mailing. Since State Farm received the subject mailing on March 22, 1979, but failed to make *any* payments of benefits to Jones until May 2, 1979, all payments made to Jones were overdue. Summary judgment for State Farm was thus improper.

The question remains, however, as to whether or not State Farm's failure to timely render no-fault benefits to Jones was done in bad faith. Code Ann. § 56-3406b (b) states in part that "[i]n the event the company fails to pay each benefit when due, the person entitled to such benefits may bring an action to recover them, and the company must show that its failure or refusal to pay was in good faith . . ." State Farm must now be provided with the opportunity to demonstrate that it acted in good faith in failing to make timely payments of Jones' no-fault benefits. For this reason, the trial court's denial of Jones' motion for partial summary judgment on Count I of his complaint must be affirmed.

*Judgment affirmed in part and reversed in part. Quillian, P. J., and Shulman, J., concur.*

SUBMITTED JULY 10, 1980 — DECIDED OCTOBER 22, 1980 —

*James E. Butler, Jr.,* for appellant.
*James E. Humes, III,* for appellee.