## 39850. ST. PAUL FIRE & MARINE INSURANCE COMPANY v. NIXON.

MARSHALL, Presiding Justice.

This case is here on certiorari. *Nixon v. St. Paul Fire &c. Ins. Co.,* 166 Ga. App. 38 (303 SE2d 158) (1983). It presents the question of whether an application for optional no-fault motor-vehicle insurance coverage is in substantial compliance with the requirements of OCGA § 33-34-5 (b) (Code Ann. § 56-3404b) (Ga. L. 1974, p. 113, § 4), where the application contains separate spaces for the insured to indicate his acceptance or rejection of the optional coverages, but the insured's signature appears only at the bottom of the page of the insurance application offering the optional coverages. We hold that such a policy application is in substantial compliance with § 33-34-5 (b) (Code Ann. § 56-3404b). These are the facts:

St. Paul Fire & Marine Insurance Company brought this declaratory-judgment action, alleging that it issued the defendant, Randy Clark Nixon, a policy of motor-vehicle insurance; that this policy contains the minimum no-fault benefits required by Georgia law, inasmuch as the defendant specifically rejected optional no-fault coverages in his insurance application; that however, the defendant allegedly sustained various personal injuries as a result of an automobile collision in June of 1980; and that he is now seeking to tender an additional premium for the optional no-fault benefits on the ground that he was not given the requisite opportunity to reject such optional no-fault benefits.

The policy application in this case is in two pages. Each page is signed by the defendant at the bottom. The first page contains standard information concerning "Vehicle identification," "Vehicle use," "Limits on your coverage," and "Driver information." Under "Limits on your coverage," there is provided $5,000 in no-fault coverage, but there is also a statement directing the applicant to complete the supplementary form. The second page, titled "Offer to Purchase Additional Coverage Application," consists of Parts I, II, III and IV. Part I requires the applicant to specify if he does not want optional personal-injury-protection coverage, or, if he does want such coverage, whether he wants it in the amount of $10,000, $25,000, or $50,000. The defendant placed an X in the block at the left of the statement, "I do not want to purchase Optional Personal Injury Protection Coverage." Part II concerns full collision coverage without deductible. The defendant put an X in the block at the left of the statement, "I do not want to purchase Full Coverage Collision." Part III concerns full comprehensive coverage without deductible. In Part III, the defendant put an X in the block at the left of

the statement, "I do not want to purchase Full Coverage Comprehensive." Part IV concerned loss-of-use coverage. As stated on the policy application, it provides reimbursement to the insured for transportation expense income not to exceed $10 per day or totaling more than $300 due to the loss of use of the motor vehicle. The defendant put an X in the block at the left of the statement, "I do not want to purchase Loss Of Use Coverage." As previously stated, the defendant signed this page of the policy application at the bottom.

The superior court denied the defendant's motion for partial summary judgment on the question of whether his rejection of optional no-fault benefits was in compliance with the requirements of Georgia law, ruling that the insurance company's policy application met the requirements of OCGA § 33-34-5 (b) (Code Ann. § 56-3404b). On appeal, the Court of Appeals reversed, stating that in *Flewellen v. Atlanta Cas. Co.,* 250 Ga. 709, 711 (300 SE2d 673) (1983), this court held " 'that the requirements of subsection (b) are satisfied by two signatures, one for acceptance or rejection of optional PIP and another to indicate acceptance or rejection of vehicle damage coverage.' " *Nixon,* 166 Ga. App. 38, supra, p. 39. We granted certiorari. We reverse.

As stated by Chief Justice Hill in his special concurrence to our dismissal of the writ of certiorari in *Nalley v. Select Ins. Co.,* 251 Ga. 722, 723 (310 SE2d 918) (1983), "While in deciding *Flewellen,* we held that two signatures satisfied the statutory requirements, we did not *hold* that two signatures were mandatory in every case." Here, as in *Nalley,* although the optional-coverage application has only one signature, it is clear from the form of the application that the intent of the insured was to reject optional PIP benefits and vehicle-damage protection. Therefore, we hold that, "the form is in substantial compliance with the statutory requirement, OCGA § 1-3-1 (c) (Code Ann. § 102-102), and satisfies the intent of the General Assembly to ensure ' "that insurers offer optional coverages to applicants for no-fault insurance *and* that an applicant's waiver of his privilege to obtain optional coverages be made knowingly *and in writing.*" ' *Flewellen,* supra, 250 Ga. at 714." (Emphasis in original.) *Nalley v. Select Ins. Co.,* 251 Ga., supra, p. 724 (Hill, C. J., concurring specially).

*Judgment reversed. All the Justices concur, except Clarke, Smith and Gregory, JJ., who dissent.*

DECIDED APRIL 4, 1984 —
REHEARING DENIED APRIL 24, 1984.

*McCauley, Owen & Sweeney, H. Andrew Owen, Jr.,* for appellant.

*Charles A. Mullinax,* for appellee.

HILL, Chief Justice, concurring.

I join the majority opinion and write separately only to point out that the signature on the form in the *Flewellen* case, *Atlanta Cas. Co. v. Flewellen,* 164 Ga. App. 885 (300 SE2d 166) (1982) (rev'd, 250 Ga. 709), reproduced at page 893 of the Court of Appeals' opinion, was the signature on the *application for insurance.* That signature was not, as here, applicable only to the "Offer to Purchase Additional [No-Fault] Coverage" (matter in brackets added). Thus, in my view, there was not substantial compliance with the signature requirement of our no-fault law, OCGA § 33-34-5 (b) (Code Ann. § 56-3404b), in *Flewellen,* supra.

CLARKE, Justice, dissenting.

The judicial history of OCGA § 33-34-5 (Code Ann. § 56-3404b) is not a happy or proud one. We have seen the interpretation of this statute fluctuate from strict to liberal, back to strict, and now, alas, back to liberal. See *Jones v. State Farm Mut. Auto. Ins. Co.,* 156 Ga. App. 230 (274 SE2d 623) (1980); *State Farm Mut. Auto. Ins. Co. v. Jones,* certiorari unanimously dismissed, 248 Ga. 46 (280 SE2d 837) (1981); *Atlanta Cas. Co. v. Flewellen,* 164 Ga. App. 885 (300 SE2d 166) (1982); *Flewellen v. Atlanta Cas. Co.,* 250 Ga. 709 (300 SE2d 673) (1983).

We stated in *Flewellen* that "The purpose of the statute is to resolve conflicts which arise when an insured contends that he was not informed of his statutory right to optional benefits . . . the resolution of the issue will be to look to the policy to determine if there was reduction or rejection of those benefits *in conformance with the statutory scheme.*" (Emphasis supplied.) *Flewellen,* 250 Ga. 709, 714. It is my belief that the intent of the statute is to resolve the conflicts over whether there was an acceptance or rejection of coverage by looking to what the statute requires and not by resorting to a case-by-case determination of intent of the parties.

The majority would rely on the principle of substantial compliance. OCGA § 1-3-1 (c) (Code Ann. § 102-102). This is nothing less than a direct retreat from the position taken by this court one year ago in *Flewellen.*

OCGA § 1-3-1 (c) (Code Ann. § 102-102) provides: "A

substantial compliance with any statutory requirement, especially on the part of public officers, shall be deemed and held sufficient, and no proceeding shall be declared void for want of such compliance, unless expressly so provided by law." The majority now holds that insurance companies are not bound by strict adherence to the statutes governing their industry. The law provides that statutory provisions control insurance policies and if the policy is inconsistent with insurance law the statute will prevail. *Nelson v. Southern Guaranty Ins. Co.*, 221 Ga. 804 (147 SE2d 424) (1966). The Georgia Motor Vehicle Accident Reparations Act, OCGA § 33-34-1 et seq. (Code Ann. § 56-3401b), clearly states that all policies and applications must meet the statutory requirements, OCGA § 33-34-3 (a) (Code Ann. § 56-3405b); OCGA § 33-34-5 (b) (Code Ann. § 56-3404b). To apply the principle of substantial compliance goes against precedent and public policy governing insurance law as well as the express language of the statute in question.

*Flewellen* stood for a clear rule to be followed based upon plain and unambiguous words of the statute. The result of *Flewellen* may have been harsh in some instances, but its burden could not be so great as that caused by the doubt and chaos which will be created in state and federal courts as a result of the imposition of a substantial compliance rule.

One of the more serious obligations placed upon the shoulders of a court of last resort is to insure the predictability of the law. The majority's retreat to substantial compliance makes scant contribution to this cause. It is my view that this obligation can only be borne by adherence to the holding in *Flewellen.* For these reasons, I must respectfully dissent.

I am authorized to state that Justice Smith and Justice Gregory join in this dissent.