### 69632. PHOENIX INSURANCE COMPANY v. WOMACK.
(329 SE2d 282)

BENHAM, Judge.

After an injury to appellee, an insured under a policy issued by appellant to appellee's father in January 1982, appellee's father tendered additional premiums and demanded $45,000 of personal injury protection ("PIP") coverage in addition to the $5,000 PIP coverage provided by the policy. When appellant denied the additional coverage, appellee brought suit. This appeal is from the grant of summary judgment to appellee and the concomitant denial of summary judgment to appellant on the issue of whether appellee was entitled to the additional PIP coverage.

1. As was the case in *Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709 (300 SE2d 673) (1983), and *St. Paul Fire &c. Ins. Co. v. Nixon*, 252 Ga. 469 (314 SE2d 215) (1984), the central issue here is the adequacy of the form employed by appellant in offering additional PIP coverage to appellee's father.

In *St. Paul Fire &c.*, supra, the Supreme Court adopted a test of "substantial compliance" with the statutory requirements relating to offers of optional coverages. The form at issue in that case had a space for only one signature, but had separate spaces for rejecting various optional coverages. Finding that it was "clear from the form of the application that the intent of the insured was to reject optional PIP benefits. . . ." the Supreme Court held the form to be in sub-

stantial compliance with OCGA § 33-34-5 (b). 252 Ga. at 470.

On the form at issue here, entitled "Supplementary Automobile Application — Georgia," spaces were provided for the applicant to place marks indicating acceptance or rejection of four optional coverages: collision, comprehensive, loss of use, and additional personal injury protection. For collision and comprehensive coverages, checks appeared in boxes indicating acceptance of specific coverages, and appellee's father's signature accompanied each of those elections. In the spaces provided for acceptance or rejection of loss of use and additional PIP coverages, checks appeared in boxes indicating rejection of those coverages, and appellee's father's signature accompanied each of those elections. Finally, appellee's father's signature appeared at the foot of the document along with that of the agent. It appears, then, that appellant required a signature to accompany each election to accept or reject optional coverages. "[I]t is clear from the form of the application that the intent of the insured was to reject optional PIP benefits . . . Therefore, we hold that 'the form is in substantial compliance with the statutory requirement . . . and satisfies the intent of the General Assembly to ensure " 'that insurers offer optional coverages to applicants for no-fault insurance *and* that an applicant's waiver of his privilege to obtain optional coverages be made knowingly *and in writing.*' " ' [Cits.]" 252 Ga. at 470.

2. In its order granting summary judgment to appellee, the trial court expressly found that "no separate spaces are provided *on any application relative to this policy* whereby the applicant could accept or reject each coverage. . ." (Emphasis supplied.) The court went on to note, in apparent explanation of that finding, that the "application in question was to 'The Travelers' Insurance Company but the Insurance Company that issued the policy was the Phoenix Insurance Company."

The substance of that holding is that because the name, "The Travelers" appears on the "Supplementary Automobile Application — Georgia" which appellee's father signed five times on the same occasion on which he executed a two-page application for insurance from appellant, the supplementary application had no relation to the other application. We find that holding to be at odds with the record in this case.

It is apparent from an affidavit submitted by the insured, appellee's father, that all three pages of the application were presented by the same agent on the same date and all were executed by the insured. In addition, appellant's records pertaining to the policy issued pursuant to the application were included in the record of this case in response to a discovery request by appellee. Those records show unmistakably that the coverages requested by the insured on the "Supplementary Automobile Application — Georgia" were included in the

policy, including a deductible amount for collision coverage which was substituted for the amount offered on the printed form. That policy was accepted by the insured without question until a need for greater coverage arose. Under those circumstances, it would be a miscarriage of justice to permit an insured to avoid the consequences of his prior election to reject optional coverage solely on the ground that the form used by the insurer contained a discrepancy in names which had no bearing whatsoever on the coverages included in the policy issued to that insured. "[T]he intent of OCGA § 33-34-5 . . . is to ensure 'that insurers offer optional coverages to applicants for no-fault insurance *and* that an applicant's waiver of his privilege to obtain optional coverages be made knowingly *and in writing*.' [Cit.] The purpose of the statute is to resolve conflicts which arise when an insured contends that he was not informed of his statutory right to optional benefits. When this claim is made, the resolution of the issue will be to look to the policy to determine if there was reduction or rejection of those benefits in conformance with the statutory scheme." *Flewellen*, supra at 714.

Having made the examination mandated by *Flewellen*, we are satisfied that the record shows that appellee's father, the named insured under the policy, knowingly and in writing rejected optional PIP coverage. Accordingly, we hold that the trial court erred in granting summary judgment to appellee and in denying summary judgment to appellant on this issue.

*Judgment reversed. Banke, C. J., and Pope, J., concur.*

DECIDED MARCH 11, 1985 —
REHEARING DENIED MARCH 25, 1985 — 

*Jeffrey S. Gilbert*, for appellant.
*G. G. Joseph Kunes, Jr.*, for appellee.