## 70411. HARTFORD ACCIDENT & INDEMNITY GROUP v. ADAMSON.
### (338 SE2d 867)

POPE, Judge.

On August 11, 1978 appellee Lorraine Adamson was involved in an automobile collision. As a result she made a claim for personal injury protection (PIP) benefits under an insurance policy providing for minimum no-fault coverage as well as coverage for $2,000 in "med-pay" issued to her by appellant Hartford Accident and Indemnity Group ("Hartford"). Appellee's claim was disputed and, on December 6, 1978, she filed suit against Hartford alleging that she was entitled to PIP benefits for losses including lost earnings, as well as seeking punitive damages, bad faith penalties and attorney fees. Hartford answered setting up various defenses and denying appellee's claim for loss of earnings. Prior to trial appellee and Hartford agreed to a settlement of the claim whereby appellee received two drafts from Hartford in the amounts of $4,945 and $2,000, both of which were later negotiated by appellee. In consideration for the payment of $6,945, on March 29, 1979 appellee signed a document entitled "Release and Settlement of All Claims" wherein she acknowledged full accord, satisfaction and settlement of any and all claims against Hartford for damages, demands, benefits, rights and causes of action sustained or claimed by appellee to have been sustained in the August 11, 1978 collision. Hartford was further released from all claims which had been or could have been asserted in the suit filed by appellee. The document stated that appellee understood and agreed that the settlement constituted full, final and complete compromise of disputed claims arising under her policy with Hartford. Consistent with the release and settlement agreement, appellee dismissed with prejudice her pending suit against Hartford. Court costs were paid by Hartford and the document dismissing the suit with prejudice was filed April 19, 1979.

On January 31, 1984 appellee filed suit against Hartford alleging her entitlement to $45,000 in additional personal injury protection coverage for medical expenses and lost wages she claims have resulted from the August 11, 1978 collision. Additionally, appellee seeks bad faith penalties, attorney fees and punitive damages. Although the record contains nothing to show the basis of this claim against Hartford, appellee apparently grounds this suit upon the cases of *Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709 (300 SE2d 673) (1983) and *Jones v. State Farm Mut. Auto. Ins. Co.*, 156 Ga. App. 230 (274 SE2d 623)

(1980). Hartford answered denying liability and raised various defenses, among them release, accord and satisfaction, and res judicata. Hartford's motion for summary judgment was denied. The trial court certified its order for immediate review and this court granted Hartford's application for interlocutory appeal. On appeal Hartford asserts that the trial court erred in denying its motion for summary judgment for two reasons: the binding release signed by appellee on March 29, 1979 is a bar to this suit, and the res judicata effect of her subsequent dismissal with prejudice of her first suit against Hartford.

1. In addressing the effect of the "Release and Settlement of All Claims" signed by appellee in 1979, we acknowledge that such a release does not necessarily bar the insured from later maintaining a *"Jones* claim" for damages arising from the same accident against the same insurer alleging entitlement to additional benefits for optional PIP coverage. See *Perry v. Intl. Indem. Co.,* 251 Ga. 709 (309 SE2d 139) (1983); *Flewellen v. Atlanta Cas. Co.,* supra at Division 4; *Seagraves v. Travelers Ins. Co.,* 171 Ga. App. 525 (320 SE2d 181) (1984); *Dupree v. Travelers Ins. Co.,* 166 Ga. App. 56 (303 SE2d 160) (1983). However, the case before us now differs in two significant respects from the foregoing cited cases. In *Flewellen v. Atlanta Cas. Co.,* supra at 712, the Supreme Court explained the rationale underlying the *"Jones* claim," to wit: "[t]he [no-fault] statute says that $50,000 PIP coverage is the least the insurer must offer. OCGA § 33-34-5 (a) [cit.]. The statute also says this offer of coverage may be refused only by a signed rejection in writing. OCGA § 33-34-5 (a) and (b) [cit.] In the absence of such a rejection, the policy, therefore, provides $50,000 PIP coverage from its inception. The insured has the right to demand and receive the benefit of $50,000 coverage upon tender by the insured of such additional premium as may be due and filing of proof of loss by the injured party." Unlike the foregoing cases, the record in this case is completely devoid of the application for insurance to show whether or not appellee was offered and rejected in writing the optional coverage. There is also *no* evidence of appellee's tender of the additional premium. We have only appellee's bare assertion of entitlement to $45,000 in optional benefits and her claim that this was demanded by her of Hartford, both of which are denied in Hartford's pleadings. Thus, because at least one essential element of appellee's claim is missing, for purposes of this appeal the issues raised herein are somewhat more theoretical. That is, assuming that appellee can otherwise show that she has a valid *"Jones* claim" for additional benefits for optional PIP coverage, does this signed 1979 release preclude her lawsuit to recover on that claim? On the basis of the reasoning which follows, we hold that it does.

Appellee relies upon *Perry v. Intl. Indem. Co.,* supra, and *Flewellen v. Atlanta Cas. Co.,* supra, for the proposition that the signed re-

lease fails because she asserts that Hartford paid her no more in basic no-fault benefits than she was legally owed ($4,945 in basic PIP benefits) and there was no real dispute at the time between Hartford and herself. We disagree. The record reveals that Hartford was justified in refusing to pay her claim for lost wages for which she brought the first suit in 1978. "The appellate courts of this state have held that an injured party is not entitled to recover lost income benefits if he is unemployed or 'receiving no income' at the time of injury. See, e.g., *State Farm &c. Ins. Co. v. Smith*, 245 Ga. 654 (266 SE2d 505) (1980); *Miller v. Spicer*, 147 Ga. App. 759 (250 SE2d 492) (1978). While it is not essential to recovery of lost income benefits that the injured party actually be earning income on the date of injury, he must, at a minimum, have accepted an offer of income-generating employment or have a continuous pattern of employment prior to the period of disability. See *American Interstate Ins. Co. v. Revis*, 156 Ga. App. 204 (274 SE2d 586) (1980); see also *State Farm [&c.] Ins. Co. v. Smith*, supra." *Leonard v. Preferred Risk Mut. Ins. Co.*, 247 Ga. 574, 575 (277 SE2d 675) (1981). By deposition taken February 13, 1979, appellee testified that prior to the August 11, 1978 collision she was last employed in November 1977. In March 1978 she was hospitalized for withdrawal from drugs and then released to reside in a halfway house to complete her recovery. She was residing there on the date of the collision and, although she was seeking employment, she did not have a job or a firm offer of employment on August 11, 1978. Appellee was simply not entitled to recover lost earnings in her 1978 claim and resulting suit. Hartford was, thus, acting in good faith in disputing her claim and would not have been liable for bad faith penalties, attorney fees or punitive damages sought in the first suit.

Further, under the settlement agreement Hartford paid appellee more in basic no-fault benefits than she was legally owed. OCGA § 33-34-4 (a) (2) provides that the maximum amount in basic PIP benefits is limited to $5,000. The statute then sets out four categories of benefits comprising basic PIP benefits which may be available to the insured: (A) medical expenses not to exceed $2,500; (B) lost earnings according to the specified formula; (C) reasonable expenses for necessary services incurred during the disability; and (D) funeral and burial expenses not to exceed $1,500. See OCGA § 33-34-4 (a) (2) (A-D). Appellee has not sought benefits under subsection (C) and those under (D) are not available to her. As we have explained, appellee is not entitled to lost earnings under subsection (B). The only category of basic PIP benefits arguably owed to appellee on her claim, medical expenses, are limited by statute to a maximum of $2,500. Hartford paid appellee $4,945 in basic PIP benefits, an amount which is at least $2,445 more than she was legally owed. Contrary to the factual situation in *Flewellen v. Atlanta Cas. Co.*, supra at 716, this *is* a case

where an insurer has made a payment in settlement of a dispute as to the entitlement of the injured party to recover and there *was* a dispute as to how much of a recovery was warranted. Under the circumstances of this case, we hold the release is effective to protect the insurer from liability for the additional PIP benefits which might have been owed under the no-fault optional coverage provisions. The trial court erred in denying Hartford's motion for summary judgment.

2. Based upon our decision in Division 1, supra, and for the reasons stated in this Court's opinion in *Davis v. First of Ga. Ins. Mgrs.*, 171 Ga. App. 347 (2) (319 SE2d 517) (1984), the trial court erred in denying Hartford's motion for summary judgment since appellee's instant suit is barred by the doctrine of res judicata.

*Judgment reversed. Deen, P. J., and Beasley, J., concur.*

DECIDED OCTOBER 25, 1985 —
REHEARING DENIED NOVEMBER 20, 1985.

*Rex D. Smith, V. Jane Reed*, for appellant.
*William R. L. Latson, Albert B. Wallace, Carl A. Adcock*, for appellee.