SENTRY INDEMNITY COMPANY,
Plaintiff-Appellee,

v.

Frances PEOPLES,
Defendant-Appellant.

No. 85-8795.

United States Court of Appeals,
Eleventh Circuit.

Oct. 7, 1986.

---

Stephen F. Carley, Ga., for defendant-appellant.

Richard B. Eason, Jr., Atlanta, Ga., for plaintiff-appellee.

Before HILL and CLARK, Circuit Judges, and HENDERSON, Senior Circuit Judge.

CLARK, Circuit Judge:

This appeal is taken from the district court's grant of plaintiff's motion for summary judgment in a declaratory judgment action filed by Sentry Indemnity Company seeking a declaration that its automobile insurance application forms were in substantial compliance with O.C.G.A. § 33–34– 5(b) at the time that it entered into a contract to provide automobile insurance to the appellant, Frances Peoples, and that Peoples was thus not entitled to any Optional Personal Injury Protection (PIP) Coverage benefits under her insurance policy beyond those already paid to her by Sentry. We reverse.

Peoples signed an application for automobile liability insurance provided by Sentry on May 3, 1978. At that same time, she signed the bottom of a separate form entitled "Georgia Automobile Supplementary Application—Offer to Purchase Additional Coverage." That one-page form contained boxes to be marked for acceptance or rejection of various levels of optional PIP, collision, comprehensive, loss of use, towing & labor, and uninsured motorists coverage. At the bottom of the page, there was a single blank for the "signature of the Insured." On Peoples' application, the box labeled "No Optional PIP" was marked, as were boxes indicating the desired amounts of the other optional coverages. Peoples placed her signature at the bottom of the form in the space indicated. If no optional coverage is purchased, the basic PIP coverage in Georgia is $5,000.

On February 11, 1980, Peoples was involved in an automobile accident, and Sentry made a timely payment of basic PIP benefits to her. By letter of counsel dated October 6, 1981, Peoples requested additional retroactive PIP coverage and offered to pay any necessary premiums. This seemingly unusual request was apparently based upon the holding of the Court of Appeals of Georgia in *Jones v. State Farm Mutual Automobile Insurance Co.*, 156 Ga.App. 230, 274 S.E.2d 623 (1980), *cert. dismissed*, 248 Ga. 46, 280 S.E.2d 837 (1981). In that case, the plaintiff signed an application form for no-fault automobile insurance in the only place provided thereon for his signature, making no other marks on the form. The court found that the insurance company had thus violated Ga.

Code Ann. § 56–3404b(b) (1978) (now O.C. G.A. § 33–34–5(b)).[1] The court held that:

> This statute contemplates that insureds who have not had an opportunity to accept or reject the optional no-fault coverage required to be offered under Code Ann. § 56–3404b(a) are deemed to have been given a "continuing" offer of such coverage from the date of the issuance of the liability policy until 30 days after being given the opportunity in writing to accept or reject the coverage ... [and that those insureds are] entitled to "accept" this offer, tender the premiums and enforce the resulting contract.

*Jones, supra,* 156 Ga.App. at 234, 274 S.E.2d at 626–27. Although Peoples' application clearly contained the separate spaces for "acceptance or rejection of each of the optional coverages" as required, it was arguable after *Jones* that her application, like that of Jones, did not meet the requirement that "these spaces [be] completed and signed by the prospective insured" since each space for accepting or rejecting various optional types of coverage had been checked but there was not a separate signature for each one.

Apparently relying on the belief that her application was legally indistinguishable from that of Jones, Peoples attempted to take advantage of the " 'continuing' offer of [optional] coverage" referred to by the court in *Jones* by sending the letter of October 6 requesting additional PIP coverage and offering to pay any necessary premiums. Sentry denied this request for optional PIP coverage, and Peoples subsequently filed suit claiming optional PIP benefits. Proceedings in that suit were then stayed pending the decision in *Flewellen v. Atlanta Casualty Co.,* 250 Ga. 709, 300 S.E.2d 673 (1983), in which the Supreme Court of Georgia first addressed itself to the interpretation of O.C.G.A. § 33–34–5(b).

In *Flewellen,* the court was presented with the question of whether the insureds were entitled to the $5,000 minimum PIP coverage as indicated on the faces of their policies or the $50,000 maximum optional coverage that the *Jones* decision indicated would still be available to them if the applications they had filled out had not conformed to the requirements of O.C.G.A. § 33–34–5(b). The application of Atlanta Casualty Company as completed by one of the plaintiffs, Mrs. Flewellen, contained merely a single signature at the end of the application. The application of Allstate Insurance Company as completed by the other plaintiff, Mrs. Van Dyke, on the other hand, contained a separate signature line adjacent to the options relating to PIP and a separate signature line adjacent to the options relating to property damage coverage, with the appropriate rejection boxes checked and the signature lines signed by the applicant. The court concluded:

> We hold that the requirements of [O.C. G.A. § 33–34–5(b) ] are satisfied by two signatures, one for acceptance or rejection of the optional PIP and another to indicate acceptance or rejection of vehicle damage coverage. The Allstate application and the manner in which it was executed and signed by Van Dyke meets these requirements. The Atlanta Casualty application completed by Flewellen does not.

> . . . .

> In the absence of such a rejection, the policy, therefore, provides $50,000 PIP coverage [which the insurer is required to offer under O.C.G.A. § 33–34–5(a) ] from its inception. The insured has the right to demand and receive the benefit of $50,000 coverage upon tender by the insured of such additional premium as may be due and filing of proof of loss by the injured party.

*Flewellen, supra,* 250 Ga. at 712, 300 S.E.2d at 676.

---

1. O.C.G.A. § 33–34–5(b) (1978) provided in pertinent part:

> Each application for a policy of motor vehicle liability insurance sold in this State must contain separate spaces for the insured to indicate his acceptance or rejection of each of the optional coverages listed in subsection (a) above and no such policy shall be issued in this State unless these spaces are completed and signed by the prospective insured.

Based upon the decision in *Flewellen*, Sentry decided that the form which had been signed by Peoples had not constituted a valid rejection of the optional PIP coverages and thus acknowledged and began paying Peoples' claims for optional PIP benefits. On March 25, 1983, the attorney for Sentry wrote to Peoples' attorney as follows:

This will further acknowledge your claim regarding optional coverage. We understand that a Motion for Reconsideration was filed in *Flewellen v. Atlanta Casualty* on March 14, 1983.

We note that the Supreme Court in its *Flewellen* decision rejected the "continuing offer" theory of *Jones v. State Farm*. The March 3rd ruling requires that unless the application contained two signatures—one to accept or reject optional PIP and one to accept or reject physical damage coverage—full optional coverages are automatically included in the policy from its inception. Thereafter, the only requirement to activate all terms of the policy is payment of any additional premium due and filing proof of loss by the injured party.

If there is no change in the final *Flewellen* decision, the additional premium due will be $694.45, bill attached.

We intend to fully comply in good faith with whatever the final appellate decision may be, and promptly consider the merits of your claim.

Record, Vol. 1, Tab 9, Exhibit F. On April 21, 1983, he further wrote:

This will further acknowledge your claim for optional coverage. On March 28, 1983, [sic] the Motion for Reconsideration was denied in *Flewellen*.

The Supreme Court rejected the "continuing offer" theory of *Jones v. State Farm*. The only requirement to activate all terms of the policy is payment of any additional premium due and filing proof of loss by the injured party.

We are attaching timely payment of optional benefits based upon proof of loss to date of economic damages which are reasonable and necessary. The payment takes into consideration prior PIP payments and the premium quoted for full optional coverages based upon *Flewellen*. We trust this handling meets with your approval.

Any additional proof of loss of economic damages you may have will be promptly considered.

Record, Vol. 1, Tab 9, Exhibit G.

Sentry further acknowledged provision of optional PIP coverage to Peoples pursuant to *Flewellen* in pleadings filed with the United States District Court for the Northern District of Georgia in the summer of 1983 as follows:

Sentry Indemnity Company did not offer Plaintiff [Peoples] optional "No-Fault" benefits until its obligation to do so under the authority of *"Flewellen"* because of the confusion reigning in the law up to the date of the *Flewellen* decision.

7.

Defendant [Sentry] does not contest its obligation to pay Plaintiff optional "No-Fault" benefits to which she may be entitled, which arose as a direct result of the automobile accident referred to above, upon proof of loss by the injured party.

8.

Defendant has tendered the optional PIP "No-Fault" benefits to which Plaintiff is entitled based upon proof of loss to date.

Record, Vol. 1, Tab 10, Supplementary Statement of Material Facts As To Which There is No Genuine Issue, at 2.

Defendant [Sentry] has provided optional PIP coverage and paid current PIP benefits due to date which are supported by reasonable proof of loss.

Record, Vol. 1, Tab 9, Exhibit U, at 2.

Defendant's tender to Plaintiff [Peoples] of $1,594.96 and $266.67 of optional PIP benefits does not constitute an offer of settlement, but does constitute payment of benefits due to date. Defendant has provided optional coverage pursuant to

*Flewellen* and tendered payment of benefits due to date which are supported by reasonable proof of loss. Further, Defendant has tendered payment of future benefits which are supported by reasonable proof of loss.

Record, Vol. 1, Tab 9, Exhibit V, at 1.

On August 5, 1983, the district court noted this agreement by Sentry to extend full optional PIP benefits:

There is no longer any dispute in this suit as to whether the insurance application complies with the requirements set forth by the Supreme Court of Georgia or whether the Plaintiff is entitled to the optional PIP benefits; the insurance company has notified the Plaintiff that it will extend the optional PIP coverage.

Because Sentry Indemnity Company has already agreed to extend the full amount of coverage, the Plaintiff's Motion for Summary Judgment is DISMISSED as moot.

Record, Vol. 1, Tab 9, Exhibit W, at 2.

With the optional benefits thus being paid by the insurance company, Peoples and Sentry were able to reach a settlement of their pending lawsuit whereby Sentry paid Peoples the amount claimed in optional PIP benefits through September 16, 1983, minus an allowance for optional PIP premiums. Peoples and her husband expressly reserved the right to make further claims for optional PIP benefits resulting from the 1980 accident as they might accrue after September 16, 1983 in the Release and Settlement Agreement.

Notwithstanding any terms or provisions to the contrary, this release is not intended and we expressly do not waive or release any claim for future optional PIP benefits which may be sustained subsequent to September 16, 1983 and the parties hereto do not waive any rights relevant thereto pursuant to Georgia Law or said policy.

. . . .

I/we understand and agree that this settlement is in full compromise, accord and satisfaction, of doubtful and disputed claims, coverages, and damages, and that the payment of the above set forth consideration is not to be construed as an admission of liability under any coverages provided by Sentry Indemnity Company, which claims are denied and regardless of the adequacy of the compensation, is intended to avoid litigation, and that there is absolutely no agreement on the part of said Sentry Indemnity Company, or any other person, firm or corporation, to make any part or do any act or thing other than herein expressly stated and clearly agreed to.

Record, Vol. 1, Tab 9, Exhibit O, at 2–3. The suit filed by Peoples was then dismissed with prejudice with consent of the parties and with the note by the district court that "[t]his Dismissal does not affect claims sustained after September 16, 1983." Record, Vol. 1, Tab 9, Exhibit N., at 1.

After the dismissal, Peoples filed further claims for optional PIP benefits stemming from the 1980 accident and accruing after September 16, 1983. These claims were not paid by Sentry. Then, on April 4, 1984, the Supreme Court of Georgia announced its decision in *St. Paul Fire & Marine Insurance Co. v. Nixon,* 252 Ga. 469, 314 S.E.2d 215 (1984). *St. Paul* presented the court with the following question:

[W]hether an application for optional no-fault motor-vehicle insurance coverage is in substantial compliance with the requirements of O.C.G.A. § 33–34–5(b) ... where the application contains separate spaces for the insured to indicate his acceptance or rejection of the optional coverages, but the insured's signature appears only at the bottom of the page of the insurance application offering the optional coverages.

*St. Paul, supra,* 252 Ga. at 470, 314 S.E.2d at 216. The court held that "such a policy application is in substantial compliance with § 33–34–5(b)." *Id.* Distinguishing the case from *Flewellen,* the court wrote:

As stated by Chief Justice Hill in his special concurrence to our dismissal of the writ of certiorari in *Nalley v. Select Ins. Co.,* 251 Ga. 722, 723, 313 S.E.2d 465

(1983), "While in deciding *Flewellen,* we held that two signatures satisfied the statutory requirements, we did not *hold* that two signatures were mandatory in every case." Here, as in *Nalley,* although the optional coverage application has only one signature, it is clear from the form of the application that the intent of the insured was to reject optional PIP benefits and vehicle damage protection.

*St. Paul, supra,* at 470, 314 S.E.2d at 217 (emphasis in original).

Based upon its conclusion that the application completed by Peoples was legally indistinguishable from that in *St. Paul* in that both "contain[ed] separate spaces for the insured to indicate his acceptance or rejection of the optional coverages, but the insured's signature appears only at the bottom of the page of the insurance application offering the optional coverages," *id.* 469, 314 S.E.2d at 216, Sentry filed the complaint for declaratory judgment in this case on April 23, 1984, seeking a judicial determination that the application form filled out by Peoples was in substantial compliance with O.C.G.A. § 33–34–5(b) and that Peoples is thus not entitled to any optional PIP benefits beyond those already paid her in the 1983 settlement.

Peoples argued to the district court, first, that Sentry's form was not in substantial compliance and, second, that by entering into the settlement in the previous case, Sentry had accepted Peoples' tendered premium for retroactive optional PIP coverage and thus entered into a contract to provide that optional coverage.

The district court held:

Plaintiff's insurance application, like that in *St. Paul, supra,* consisted of two pages with signature lines at the bottom of each. The second page, also similar to that in *St. Paul,* is divided into different types of optional coverages, and the portion regarding optional PIP coverages contains boxes to be marked for accepting different amounts of coverage or rejecting all optional PIP coverages. Thus, the application is in substantial compli-

ance with former O.C.G.A. § 33–34–5(b). Therefore, Defendant made a valid rejection of all optional PIP coverages when she executed the application on May 3, 1978.

The court finds no merit in Defendant's argument that the settlement of the previous lawsuit constitutes a binding agreement by Plaintiff to provide maximum optional PIP coverage. That settlement was entered into prior to the decision in *St. Paul, supra.* However, the settlement agreement did not commit Plaintiff to honor future claims. In fact it was limited to all claims made through September 16, 1983. That agreement does not prevent Plaintiff from denying claims for optional PIP benefits arising after that date.

Record, Vol. 1, Tab 11, at 2–3.

On appeal, Peoples argues that, even if her application did indeed substantially comply with O.C.G.A. § 33–34–5(b), her demand for maximum optional PIP coverage constituted an offer, and Sentry's "eventual *acceptance* of said offer by agreeing to grant Defendant said maximum optional no-fault coverage, quoting a premium therefore, paying benefits thereon and giving credit for the full premium therefore constituted an *accepted* of said offer and a contract was formed between the parties...." Brief of Appellant at 15.

We do not accept Peoples' argument that her demand for optional PIP coverage was an offer and Sentry's payment of benefits from such coverage was an acceptance. However, we do hold that a contract for maximum optional PIP coverage was formed, with the offer and acceptance being Sentry's payment of optional PIP benefits in the months following the *Flewellen* decision and the deduction from those payments with Peoples' consent of the full premium for such coverage.

Sentry argues that, even if such a contract was formed, it cannot be enforced because the consideration upon which it is based was given as a result of a mutual mistake of law. *See* O.C.G.A. § 13–5–4. The mistake which Sentry alleges concerns

the validity of Peoples' rejection of optional PIP coverage in 1978. In the wake of *Flewellen*, both parties seem to have assumed that the rejection was not valid and that Sentry was thus required to provide benefits under the optional coverage. In light of *St. Paul*, however, Sentry now feels that the rejection was valid. The problem with Sentry's argument here is that it is not based upon a mutual mistake of law but upon a change in the law from *Flewellen* to *St. Paul*, and a change of law does not operate under O.C.G.A. § 13–5–4 to make a contract unenforceable. As the author of the opinion for the court in *Flewellen* explained in his dissenting opinion in *St. Paul*: "The majority would rely on the principle of substantial compliance.... This is nothing less than a direct retreat from the position taken by this court one year ago in *Flewellen*." *St. Paul, supra,* at 471, 314 S.E.2d at 217 (Clarke, J., dissenting) (citation omitted).[2]

Having decided that a binding contract for the provision of full optional PIP coverage and benefits was formed between Sentry and Peoples in 1983 after the *Flewellen* decision was announced, we need not reach the question of whether the policy application signed by Peoples in 1978 is in substantial compliance with O.C.G.A. § 33–34–5(b) under *St. Paul*.

REVERSED and REMANDED.

---

**2.** As Professor Corbin wrote:

In most cases in which money has been paid in the belief that it was due, such belief being induced by the existing judicial decisions, the payor has been held not entitled to restitution when those decisions are disapproved in a later decision. Of course, the later decision may be overruled too.

3 A. Corbin, *Corbin on Contracts* § 617 at 757 n. 61 (1960).