72533. DAIRYLAND INSURANCE COMPANY v. KELLEY.
(352 SE2d 174)

McMURRAY, Presiding Judge.
The unpredictable flow of cases stemming from the holdings in *Jones v. State Farm &c. Ins. Co.*, 156 Ga. App. 230 (274 SE2d 623), and *Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709 (300 SE2d 673), prompted Dairyland Insurance Company ("Dairyland") to file a de-

claratory judgment action against its insured, Margie S. Kelley, to determine its liability for optional personal injury protection (PIP) benefits under Georgia "no-fault" law, OCGA § 33-34-1 et seq. After discovery, Dairyland filed its motion for summary judgment and Mrs. Kelley filed her motion for partial summary judgment, each with supporting affidavits. The relevant facts are as follows: On March 31, 1975, Mrs. Kelley's husband, William F. Kelley, applied for and was issued an automobile insurance policy in the name of "Margie S. Kelley." The policy was renewed annually and remained effective through February 29, 1984. Under a section in the insurance application entitled: "NO-FAULT OPTIONAL COVERAGES ACCEPTANCE OR REJECTION STATEMENTS," under the *"Reject"* section, there is drawn a diagonal line through six signature lines which are apparently provided for rejecting four optional insurance coverages. (See Appendix I.) The purported signature of "Willie F. Kelley" is written on the diagonal line. However, it is uncontradicted that this signature is not that of William F. Kelley. (Mr. Kelley died on March 11, 1980, as a result of injuries he sustained in an automobile collision.)

On January 14, 1986, the trial court entered an order denying Dairyland's motion for summary judgment, granting partial summary judgment in favor of Mrs. Kelley and holding that "[t]he maximum optional benefits coverage has been in effect since the effective date of the policy, March 31, 1975." Dairyland now appeals. *Held*:

The controlling issue in this appeal is whether the insurance application provided by Dairyland was executed in compliance with OCGA § 33-34-5 (b). (This case involves OCGA § 33-34-5 (b) as it existed prior to its amendment in Ga. L. 1982, p. 1234.) This statute provided: "Each application for a policy of motor vehicle liability insurance sold in this state must contain separate spaces for the insured to indicate his acceptance or rejection of each of the optional coverages listed in subsection (a) of this Code section *and no such policy shall be issued in this state unless these spaces are completed and signed by the prospective insured.*" (Emphasis supplied.)

It is undisputed that the application form provided by Dairyland was in compliance with former OCGA § 33-34-5 (b) by providing "separate spaces for the insured to indicate his acceptance or rejection of each of the optional coverages . . ." However, an examination of the application form shows that it was not properly executed by the insured, or an authorized agent of the insured,[1] by signing the

---

[1] In the interest of avoiding those ills of Pandora's box relating to the issue of the "authority" of another to reject the insured's optional benefits, we shall assume that the person who signed "Willie F. Kelley" on the insurance application was acting upon the authority of the insured. However, in this regard we make reference to *Miller v. State Farm &c. Ins. Co.*,

separate spaces provided in the application for rejection of the optional benefits. See *Government Employees Ins. Co. v. Mooney*, 250 Ga. 760 (1) (300 SE2d 799).

" '(T)he intent of OCGA § 33-34-5 (cit.) is to ensure "that insurers offer optional coverages to applicants for no-fault insurance *and* that an applicant's waiver of his privilege to obtain optional coverages be made knowingly *and in writing*." *Jones*, at p. 232. The purpose of the statute is to resolve conflicts which arise when an insured contends that he was not informed of his statutory right to optional benefits. When this claim is made, the resolution of the issue will be to look to the policy to determine if there was reduction or rejection of those benefits in conformance with the statutory scheme.' *Flewellen v. Atlanta Cas. Co.*, supra at 714." *Douglas v. Jefferson-Pilot &c. Co.*, 175 Ga. App. 457 (333 SE2d 634).

In the case sub judice, the purported signature of William F. Kelley was not placed on the insurance application in conformance with the statutory scheme. Notwithstanding this obvious defect, Dairyland cites *St. Paul Fire &c. Ins. Co. v. Nixon*, 252 Ga. 469 (314 SE2d 215), arguing that the signature, "Willie F. Kelley,"[2] substantially complied with the execution requirements of OCGA § 33-34-5 (b). We do not agree.

"In *St. Paul Fire &c. Ins. Co. v. Nixon*, 252 Ga. 469 (314 SE2d 215) (1984), the Supreme Court held that the application form under review in that case was in substantial compliance with OCGA § 33-34-5 (b). That application contained separate spaces for the insured to indicate his acceptance or rejection of the optional coverages, but the insured's signature appeared only at the bottom of the page offering the optional coverages . . . Following the holding in *Nixon*, this court found a similar application form in *Reed v. Ga. Farm Bureau Mut. Ins. Co.*, 171 Ga. App. 126 (318 SE2d 746) (1984), to be in substantial compliance with the statute . . . The applications approved by the courts in *Nixon* and *Reed* clearly reveal that the intent of the insured was to reject optional PIP benefits and vehicle-damage protection. The optional coverages information in those cases was prominently displayed in a separate part of the form and was provided in clear and easily readable sentences." *Douglas v. Jefferson-Pilot &c. Co.*, 175 Ga. App. 457, 458, supra. While *Nixon* and *Reed* applied a "sub-

---

155 Ga. App. 487 (2) (271 SE2d 14), and *Holt v. Intl. Indem. Co.*, 171 Ga. App. 817, 819 (321 SE2d 374).

[2] For discussion concerning whether an insurance carrier may rely on an unauthentic signature purporting to reject optional coverages see *Morris v. Fidelity & Cas. Co.*, 169 Ga. App. 883, 884 (1) (315 SE2d 451) and *National Indem. Co. v. Smith*, 172 Ga. App. 415 (323 SE2d 274). In this regard, the circumstances in the case sub judice are in line with this court's holding in *Southern Guaranty Ins. Co. v. Cotton States Mut. Ins. Co.*, 176 Ga. App. 140, 143 (3) (335 SE2d 598).

stantial compliance" rationale to avoid the strict requirements of OCGA § 33-34-5 (b) in cases where the application forms clearly revealed the intent of the insured to reject the optional coverages, there is no indication that the "substantial compliance" rationale is to be applied to the execution requirements of the statute. However, assuming the contrary, the signature on the application in the case sub judice, purporting to reject four optional coverages in one stroke, does not indicate a clear rejection of the optional benefits. Consequently, since Dairyland was in violation of the *execution requirements* of OCGA § 33-34-5 (b), the trial court was correct in declaring that "[t]he maximum optional benefits coverage has been in effect since the effective date of the policy . . ." See *Government Employees Ins. Co. v. Mooney*, 250 Ga. 760 (1), supra. Accordingly, the trial court did not err in denying Dairyland's motion for summary judgment and granting partial summary judgment in favor of Mrs. Kelley with regard to her right to the maximum optional benefits coverage. There being no other issues before the trial court for resolution, this court is without jurisdiction to consider other issues raised by Dairyland in this appeal.

*Judgment affirmed. Pope, J., concurs. Carley, J., concurs in the judgment only.*

All statements or representations in this application made by me or on my behalf are completely true, and if a policy is issued, is issued in reliance upon these statements or representations.

I also fully understand and agree that no coverage can be bound unless a premium deposit of $50.00 or at least two months' premium accompanies this application and if such deposit does accompany this application, that coverage is bound no earlier than the time and date the application is signed by both the applicant and agent.

I also fully understand and agree that if any premium remittance by me, or on my behalf, is not honored by the Payor (Bank), it will be deemed non-payment of premium, and no coverage will have been bound or afforded under this application and subsequent binder or policy.

I declare that there are no male operators of the automobile described in this application UNLESS their names and ages are shown under Section 2.

I also fully understand that my Motor Vehicle Driving Record and the Motor Vehicle Driving Records of all other drivers listed in Section 2 above will be checked and if such records indicate any difference from the information shown in Section 3 above, the premium for the policy will be adjusted accordingly.

As part of the company's policy issuance procedure, a routine inquiry will be made to obtain the driving record of all drivers of the vehicle being insured. Reports received may contain information concerning character, general reputation, personal characteristics and mode of living. Upon written request, additional information as to the nature and scope of the report, if one is made, will be provided.

---

TO EXPEDITE SERVICE IN CASE OF CLAIMS OR OTHER EMERGENCIES PLEASE SHOW YOUR HOME AND BUSINESS TELEPHONE NUMBERS

INSURED'S HOME PHONE _____ AREA CODE _____ NUMBER _____   INSURED'S BUSINESS PHONE _____ AREA CODE _____ NUMBER _____

---

**COVERAGE BOUND:**

Time _____

Date _____

SIGNED:

Applicant _Willie F Kelly_

Agent _Mary Mall_

AGENCY NAME _____

AGENCY NUMBER _____

ADDRESS _____

CITY _____ ZIP CODE _____

TELEPHONE NUMBER _____

**UM REJECTION**

I have had Uninsured Motorist Coverage explained to me and fully understand it. I hereby reject such coverage and understand that my policy will not contain this coverage when issued or renewed. I also understand that I may add this coverage to my policy at any future date.

Date _____ X _Willie F. Kelly_ Signature of Applicant

---

## NO-FAULT OPTIONAL COVERAGES ACCEPTANCE OR REJECTION STATEMENTS

In accordance with the provisions of the "Georgia Motor Vehicle Accident Reparations Act," I hereby accept or reject the following optional coverages:

**A. PERSONAL INJURY PROTECTION COVERAGE**
$5,000 Basic Coverage — This coverage is required on all policies and cannot be rejected.
Named Insured's signature required in either the "Accept" or "Reject" column for each optional coverage shown.

| Optional Coverage | Accept | Reject | Date |
|---|---|---|---|
| $10,000 Aggregate Limit | (s) _____ | (s) _____ | |
| $25,000 Aggregate Limit | (s) _____ | (s) _____ | |
| $50,000 Aggregate Limit | (s) _____ | (s) _____ | |

**B. FULL ACTUAL CASH VALUE COMPREHENSIVE**
(Note: If a deductible is desired, full coverage must be rejected.) (s) _____ (s) _____

**C. FULL ACTUAL CASH VALUE COLLISION**
(Note: If a deductible is desired, full coverage must be rejected.) (s) _____ (s) _____

**D. LOSS OF USE**
(Insured Automobile) (s) _____ (s) _____

NOTE: IF THE ABOVE OPTIONAL COVERAGES ARE NOT PROPERLY REJECTED, THEY WILL BE ADDED TO THE POLICY ISSUED AND THE PREMIUM CHARGED FOR THE COVERAGE.

_Exhibit A2_

---

APPENDIX I

DECIDED NOVEMBER 4, 1986 —
REHEARING DENIED DECEMBER 10, 1986 —

*Richard B. Eason, Jr., Carolyn J. Kennedy*, for appellant.
*William L. Skinner*, for appellee.