## 65168. VOYAGER CASUALTY INSURANCE COMPANY v. COLWELL.

CARLEY, Judge.

Appellee-plaintiff instituted suit against appellant-defendant, originally seeking to recover $5,000 in basic PIP benefits and,

pursuant to OCGA § 33-34-6 (Code Ann. § 56-3406b), 25% penalty, punitive damages, and attorney's fees. Appellee subsequently amended her complaint to seek an additional $45,000 in optional PIP benefits. See *Jones v. State Farm Mut. Auto. Ins. Co.,* 156 Ga. App. 230 (274 SE2d 623) (1980). The case proceeded to trial and, at the close of the evidence, the trial court directed a verdict for appellee as to her entire PIP claim. The issue of appellant's liability for the 25% penalty, punitive damages and attorney's fees was submitted to the jury and a verdict as to these claims was returned for appellee. Appellant appeals from the entry of judgment on the verdicts.

1. Appellant enumerates as error the direction of a verdict for appellee as to her claim for optional PIP benefits. All arguments advanced by appellant in this regard have been rejected in *Flewellen v. Atlanta Cas. Co.,* 250 Ga. 709 (300 SE2d 673) (1983). Accordingly, this enumeration is without merit.

2. Appellant asserts that the trial court erred in refusing to allow into evidence certain testimony concerning its agent's oral "offers" regarding optional PIP coverage, which were made to but declined by the applicant. It is asserted that this evidence was relevant with regard to the issue of whether the optional PIP coverage had been rejected by the applicant and therefore whether appellee was entitled to recover those benefits. "While [the insurer] offered the . . . testimony of its agent . . . to prove that [the insured] had been informed of the optional coverages and had knowingly rejected these coverages, [former OCGA § 33-34-5 (Code Ann. § 56-3404b)] clearly sets out the requirements that the application contain 'separate spaces' and that an applicant's rejection of optional no-fault coverages must be *in writing* as evidenced by his signature on 'separate spaces.' " *Jones v. State Farm Mut. Auto. Ins. Co.,* supra, at 233. *"The statute . . . says this offer of coverage may be refused only by a signed rejection in writing.* OCGA § 33-34-5 (a) and (b). *In the absence of such a rejection, the policy, therefore, provides $50,000 PIP coverage from its inception.* The insured has the right to demand and receive the benefit of $50,000 coverage upon tender by the insured of such additional premium as may be due and filing of proof of loss by the injured party." (Emphasis supplied.) *Flewellen v. Atlanta Cas. Co.,* supra, at 712. Accordingly, we find that the evidence concerning the oral communications between appellant's agent and the applicant had no relevance with reference to appellee's entitlement to recover optional PIP benefits. This enumeration is without merit.

3. In his closing argument to the jury, appellant's counsel was not allowed to discuss the fact that on the original policy application,

which did not comply with OCGA § 33-34-5 (Code Ann. § 56-3404b) as interpreted in *Jones* and *Flewellen,* the insured had "accepted" only the basic $5,000 PIP coverage. Appellant asserts on appeal that this evidence was relevant on the issue of its good faith in denying appellee's claim for optional PIP benefits and was erroneously excluded from the jury's consideration as to that issue.

The policy application had no relevance with regard to appellant's good faith in refusing to pay appellee's claim for optional PIP benefits. As noted in Division 1, the trial court had correctly determined that, as a matter of law, appellee was entitled to those benefits as against appellant's defense which apparently was merely an attack upon the interpretation of OCGA § 33-34-5 (Code Ann. § 56-3404b), reached in *Jones* and subsequently upheld in *Flewellen,* that a single signature at the end of the application was not a sufficient rejection of optional PIP benefits. If anything, appellant's refusal to pay the claim solely on the basis that the applicant for coverage had "rejected" optional PIP benefits in the guise of an application form which did not comport with the requirements of OCGA § 33-34-5 (Code Ann. § 56-3404b) as interpreted in *Jones* and *Flewellen* demonstrates appellant's "bad faith." See generally *Bituminous Cas. Corp. v. Mowery,* 145 Ga. App. 45 (244 SE2d 573) (1978). Compare *Sentry Indemnity Co. v. Sharif,* 156 Ga. App. 828, 829 (2) (280 SE2d 354) (1980). "[T]he mandate of the law was clear and [had] the obvious purpose of making the insured aware of the absolute right to minimum optional benefits. There was no prior approval of the [appellant's] forms. The law had been in effect since 1975, Ga. L. 1974, p. 113, and the insurer proceeded at its own risk in failing to comply with the statute when issuing this policy . . ." *Flewellen,* supra, at 714. Whether or not there had been a valid rejection of optional PIP benefits under the circumstances in the instant case was not a question of first impression at the time of trial, *Jones* having already specifically decided against appellant's contentions in this regard and the mandate of the law being otherwise clear. The evidence was in no way relevant to appellant's good faith and was not erroneously rejected as such by the trial court.

4. Appellant was not permitted to introduce evidence concerning its unsuccessful efforts to reach a compromise with appellee concerning its untimely failure to pay her original claim for basic PIP benefits. The trial court's refusal to admit evidence of these compromise efforts is enumerated as error, the argument being that it was relevant as to appellant's "good faith" failure to pay that claim.

" '[A]dmissions or propositions made with a view to a compromise, are not proper evidence.' [Cits.] 'The rule against allow-

ing evidence of compromise is founded upon recognition of the fact that such testimony is inherently harmful, for the jury will draw conclusions therefrom in spite of anything said by the parties at the time of discussing the compromise, and in spite of anything which may be said by the judge in instructing them as to the weight to be given such evidence.' [Cit.]" *Newton Bros. v. Shank,* 240 Ga. 471 (241 SE2d 231) (1978).

A review of the record in the instant case demonstrates that appellant was afforded the opportunity to introduce evidence that its original untimely failure to pay appellee's basic PIP claim was the result of a clerical error, evidence which would authorize but not demand a finding that appellant was acting in good faith when it did not pay the claim in a timely fashion. See *Atlanta Cas. Co. v. Jones,* 247 Ga. 238, 241 (4) (275 SE2d 328) (1981). We find nothing which would take appellant's refused evidence of its subsequent unsuccessful efforts to compromise *all* of appellee's disputed potential claims arising from that untimely failure to pay — including attorney's fees, penalties and punitive damages — outside the general rule that such evidence would be "inherently harmful." "The evidence implies that [appellee] refused to cooperate in negotiating a settlement, despite the [appellant's] findings and despite [its] best efforts . . . To hold otherwise would do injury to the spirit and purpose of [OCGA § 24-3-37] (Code Ann. § 38-408) ([cit.]), since parties would hesitate to enter settlement negotiations on disputed claims if their ultimate failure to settle were admissible in evidence against them. [Cit.]" *Cawthon Motor Co. v. Scheufler,* 153 Ga. App. 282, 287 (265 SE2d 96) (1980). Accordingly, this enumeration is without merit.

5. As her first witness, appellee called the claims adjuster who had handled her file. At the time this witness was called, appellee's attorney did not state that his purpose in so doing was cross-examination pursuant to OCGA § 24-9-81 (Code Ann. § 38-1801). During the course of the ensuing examination, appellant objected to the leading of the witness by appellee's counsel. At that point, appellee's counsel for the first time stated that the witness had been called for the purpose of cross-examination. Appellant's objections were overruled and appellee was allowed to continue to cross-examine the witness. At the close of appellee's examination, appellant unsuccessfully sought permission to have the witness on cross. Appellant enumerates the trial court's rulings allowing appellee but refusing appellant the right to cross-examine this witness.

"[I]n Georgia . . . failing to specify *when calling* an opposing party to the stand that he or she is being called for purposes of

cross-examination only makes the witness that of the party calling him or her to the stand. [Cit.]" (Emphasis supplied.) *Johnson v. Rheney,* 245 Ga. 316, 319 (264 SE2d 872) (1980). "There is no presumption that we know of to the effect that, when one party puts an opposing party on the stand, or puts an agent or officer of the opposing party on the stand, the witness is put on the stand for the purpose of cross-examination and not as a witness for the party putting such a witness on the stand. Therefore, it would seem that, *in the absence of an announcement in open court to the effect that such a witness is put up for the purpose of cross-examination, the witness must be treated as the witness of the party calling him to the stand, with the attendant consequences. In such a situation, unless some special reason exists therefor, the court abuses its discretion in not allowing the other party to cross-examine the witness.*" (Emphasis supplied.) *Wight Hdw. Co. v. American Lubricants Co.,* 91 Ga. App. 339, 346 (3) (85 SE2d 507) (1954). Accordingly, assuming without deciding that the trial court did not err in allowing appellee to cross-examine the witness over appellant's objecting that the provisions of OCGA § 24-9-81 (Code Ann. § 38-1801) had not been properly invoked at the time the witness had been originally called to the stand and before examination had begun, it was, "[i]n such a situation," an abuse of discretion for the trial court to refuse appellant the opportunity to cross-examine the witness. To hold otherwise would countenance a procedure whereby an announcement at *any* stage of the examination that the witness had been called on cross would serve to preclude the opposing party from cross-examining a witness who had ostensibly been called on behalf of the other side. Obviously, whether viewed in the context of the practicalities of forming an effective and cogent representation of a client's case at a jury trial or from a sense of fundamental fairness, an attorney should be apprised at the outset that a witness whose testimony is about to be given has not been called by the other side as its own witness but instead for the purpose of cross-examination. The rule that it must be established at the very outset that an opposing party or his agent is being called on cross "is the wisest. It can be easily followed and will eliminate considerable confusion and uncertainty which could surely arise from a ruling to the contrary." *Wight Hdw. Co. v. American Lubricants Co.,* supra, at 346. In the instant case, once appellee belatedly established that the witness was on cross and was allowed to continue to have the witness on cross, the trial court, at a minimum, erred in refusing appellant an equal opportunity to elicit testimony from the witness on cross-examination. The error in this regard was not harmless. "This court cannot say as a matter of law that an attorney can get from a witness subpoenaed or produced in

court by his client whatever he needs in the way of testimony just as well by a direct examination as by cross-examination." *Wight Hdw. Co. v. American Lubricants Co.,* supra, at 346.

6. For the reason discussed in Division 5 of this opinion, the judgment is reversed and a new trial ordered.

*Judgment reversed. Shulman, C. J., and Quillian, P. J., concur.*

DECIDED MARCH 11, 1983 —
REHEARINGS DENIED MARCH 23 AND 25, 1983 —

*William A. Erwin, Kenneth B. Hodges, Jr.,* for appellant.
*Kenneth M. Henson, Jr., Millard D. Fuller,* for appellee.

