71848. BOB LAIRSEY INSURANCE AGENCY v. ALLEN et al.
71849. PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY v. ALLEN et al.
(348 SE2d 658)

BEASLEY, Judge.

On February 7, 1983, Lewis H. Allen went to the Bob Lairsey Insurance Agency to purchase liability and PIP coverage from Pennsylvania National Mutual Casualty Insurance Company. The application bore the signature L. H. Allen and the space for the spouse's signature was left blank. The supplemental application form for the acceptance or rejection of excess "no-fault" coverage was marked to indicate that this coverage was rejected. It contained the signatures "L. H. Allen" and "Evelyn O. Allen."

Lewis Allen was involved in an automobile collision on July 26 and later reached a settlement with the other party. Penn paid Allen $5,000 in basic PIP benefits. The following January, Allen requested additional PIP coverage of $45,000, retroactive to the date of his application, through the Lairsey agency. Penn refused the request and sent Allen a copy of the supplemental application purportedly signed by Allen and his wife. The Allens claimed however, that they had never seen the application before it was sent to them, that PIP benefits had not been explained to Lewis Allen, and that the signatures on the application were not theirs. They had a handwriting expert examine the copy of the document and compare it with copies of their known signatures. The expert agreed that the signatures were not those of the Allens. The insurance company was notified by letter that a named expert had determined that the signatures were forgeries. The premium for the additional PIP coverage was tendered and rejected. The Allens filed suit against Penn and the Lairsey agency, alleging their signatures were forged on the application for supplemental PIP coverage and seeking additional optional PIP benefits in the amount of $45,000, plus the statutory penalty and attorney fees under OCGA § 33-34-6 (b), and $100,000 in "punitive damages." The jury verdict awarded the Allens $45,000 PIP benefits, $11,250 statutory penalty and $4,400 attorney fees against Penn and $19,350 "tort"

damages against both defendants.

*Case No. 71848*

1. Because we find that enumeration of error 14 requires reversal, we do not reach the question regarding the validity of the verdict, although we believe the verdict would be correct as a matter of law and was misinterpreted so that the judgment is not reflective of it. The verdict of the jury should be upheld if it can be done in accordance with the law. OCGA §§ 9-12-4; 51-12-12. *Maloy v. Dixon*, 127 Ga. App. 151, 163 (6) (193 SE2d 19) (1972); *Pepsi Cola v. First Nat. Bank of Columbus*, 248 Ga. 114, 115 (1) (281 SE2d 579) (1981).

2. The error which requires a new trial relates to the presentation of evidence relevant to the issue of whether plaintiff signed the supplemental application rejecting optional coverage. That was at the heart of this case. It is not a case regarding whether the rejection form complies with the law insofar as its content is concerned, as was *Douglas v. Jefferson-Pilot Fire &c. Co.*, 175 Ga. App. 457 (333 SE2d 634) (1985); *Associated Indem. Corp. v. Sermons*, 175 Ga. App. 513 (333 SE2d 902) (1985). It is not a case turning on whether the agent explained the optionals to the insured. As appellant properly recognizes, oral conversations cannot supply the ingredient of a valid rejection as the law has taken the very practical approach and simply requires a signed document which establishes easily and clearly that there was a rejection. *Voyager Cas. Ins. Co. v. Cowell*, 166 Ga. App. 17, 18 (2) (303 SE2d 152) (1983). That forecloses the multitudinous problems of credibility and recollection which are inherent in any situation where an oral conversation is allowed to fill in the gaps, as to what was offered and what was rejected.

This, however, is a case wherein the issue was whether the insured signed the rejection form. He said he did not, and the agent and the employee said he did, for both himself and his wife. Thus we do come back to the problems of credibility and recollection, because the law does not require that the insured's signature be witnessed or notarized. And even that could in some instances not be conclusive, although it would be firmer proof of actual signature.

Since recollection and credibility were crucial aspects of the question "Did he sign?" all the circumstances of the occasion when insured went to the agent's office became important and relevant. The evidence was that he was without insurance because he had chosen not to continue his previous policy and the agency had called him several times to come in to process a new application with another insurer so that he would not be riding around without coverage. He had to come in, the agency explained to him, because it could not submit the application without his signing.

The trial was in May 1985. The event had occurred on February 7, 1983, over two years previously. It involved an ordinary transaction of purchasing auto insurance from the insured's agent of long standing, so it was not a particularly memorable event. Understandably, the insured was somewhat equivocal about what precisely transpired on that occasion, but he testified that he was certain that he did not sign the supplemental application rejecting optional PIP, for himself or for his wife who was not with him. The agent and his employee, who was his daughter and the wife of the brother of insured's daughter's husband, positively testified that he signed the form. Thus, recollection and credibility were pre-eminent.

Plaintiff had asserted in his complaint that no one had ever explained the optional coverage to him, and when he testified, he stated in an unresponsive answer to cross-examination the same thing. On examination of the agent, his counsel questioned him about the circumstances of the occasion when plaintiff came to the office in connection with obtaining the policy. When in the course of the direct examination he asked, "Did you explain the different kinds of coverage to him?", objection was raised and the court refused to allow the question or the subject matter because of the *Voyager* ruling that oral conversations cannot be substituted for a signed and proper rejection form. Counsel wished to establish that the matter was explained, for the purpose of impeaching the insured's testimony that it was not explained and attacking his memory.

Obviously, if the jury believed that it was explained, there would be a serious undermining of the insured's testimony that he had not signed the document. "When a witness shall be successfully contradicted as to a material matter, his credit as to other matters shall be for the jury." OCGA § 24-9-85 (a). If the agent explained the options, it would lend credence to the agent's and his employee's testimony that insured thereafter signed rejecting them. It would also explain the insured's testimony that he never saw the document before, inasmuch as it would give rise to the inference that he just did not read it or pay attention to it after the agent upon whom he relied explained his options. He was, after all, in a hurry since he had taken time out of his work to come by for the insurance. It would weaken the insured's testimony because it would mean not only that he remembered wrong or was not to be believed with respect to whether explanation was given but also with respect to whether he actually signed.

If the agent could persuade the jury that insured could not really remember correctly on one point with respect to the particulars of that occasion, he might be able to do so on another as well. It is true that what he explained was irrelevant regarding the issue of rejection, but it was relevant here on the issue of signing. The jury was called

upon to decide issues of recollection and credibility, and the agent, who was being sued for fraud, was entitled to produce evidence of the context which would tend to impeach the insured's testimony that he did not sign the document. This is crucial for the very reason that the signature is conclusive proof in law that the insured knows of the options and rejects them. *St. Paul Fire &c. Ins. Co. v. Nixon*, 252 Ga. 469 (314 SE2d 215) (1984); *Grange Mut. Cas. Co. v. Hall*, 173 Ga. App. 382 (326 SE2d 497) (1985).

3. It is unnecessary to address the remaining enumerations of error.

### Case No. 71849

1. For the foregoing reasons, we reverse in Case Number 71849 also.

2. The claim that the complaint must allege fraud with particularity is without merit. Failure to assert a fraud claim with particularity as required by OCGA § 9-11-9 (b) does not warrant automatic dismissal of the complaint. The opposing party's remedy is to move for a more particular statement. *Irvin v. Lowe's of Gainesville*, 165 Ga. App. 828, 830 (302 SE2d 734) (1983); *Cochran v. McCollum*, 233 Ga. 104 (210 SE2d 13) (1974).

*Judgments reversed in case nos. 71848 and 71849. Banke, C. J., McMurray, P. J., Birdsong, P. J., Sognier and Pope, JJ., concur. Deen, P. J., Carley and Benham, JJ., concur in part and dissent in part.*

DEEN, Presiding Judge, concurring in part and dissenting in part.

### As to Division 1 of the Majority Opinion

The jury returned its verdict in this case as follows:
"We the jury find on behalf of the plaintiff Lewis H. Allen in the amount of: $80,000.00

| $45,000.00 | PIP |
| $11,250.00 | 25% Penalty |
| $ 4,400.00 | Atty. Fees |
| | |
| $60,650.00 | |
| $19,350.00 | Tort Damage 1/2 against each Defendant |
| | |
| $80,000.00" | |

The trial judge, pursuant to the verdict, rendered an $80,000 judgment. The majority opinion in Division 1 states in part: "[W]e believe the verdict would be correct as a matter of law and was misinterpreted so that the judgment is not reflective of it." This is said with-

out providing any mathematical methodology so as to enable one to evaluate the arithmetical accuracy of the conclusion.

At least, at first blush, three questions need attention, as they create cause for concern:

(a) Could the Lairsey agency be held liable for punitive damages under OCGA § 33-34-6 (c), as the penalty provided for in that section applies only to "insurers?" The agency does not seem to fit the category as an insurer.

(b) As the insurance company was held jointly liable with the agency, the only theory of recovery would be in tort. The plaintiff, however, neither pleaded nor proved any damages except the $45,000 in PIP benefits for breach of contract. How stands this feature of the verdict and judgment?

(c) Damages were sought as punitive damages under OCGA § 51-12-5. For an award of punitive damages under this code section must there also be an award of compensatory damages? Since the latter does not exist, how stands the former?

Since the majority opinion does not elaborate on the verdict other than to say, "The verdict of the jury should be upheld if it can be done in accordance with the law," this dissent likewise will not deal further with it. Had the majority outlined its thoughts and provided enlightenment on this matter more in detail, the questions shown in (a), (b), and (c) could well be explained and disappear.

### As to Division 2 of the Majority Opinion

The majority opinion requires a new trial in this case solely based on Enumeration of Error 14. The latter enumeration reads as follows: "The court erred in refusing to allow *cross-examination* on the issue of whether the optional coverages were explained to Plaintiff." (Emphasis supplied.) The particular point argued in the brief relating to this enumeration of error is "that Lairsey's counsel could not cross-examine Allen." Actually when Allen was on cross-examination, counsel was not prohibited from testing the plaintiff's recollection as to whether he had or had not signed the no-fault application. Apparently counsel elected not to do so. The cross-examination appeared to be full and within the discretion of the court.

There is no enumeration of error regarding limiting Lairsey's counsel upon the direct-examination of Lairsey as to surrounding circumstances. The trial judge limited the direct-examination of Lairsey under *Colwell v. Voyager Cas. Ins. Co.*, 251 Ga. 744, 748 (309 SE2d 617) (1983). The enumeration of error, however, goes directly only to the prohibition of the cross-examination of Allen. The majority opinion seemingly has rewritten this alleged error to read 180 degrees differently by reversing the case specifically on the limitation of the di-

rect-examination of Lairsey by his own counsel, to which no error was enumerated. This court cannot enlarge upon an error enumerated. We should not reverse a case on an alleged error which has not been enumerated and assigned as error by the parties. We must take the case as we find it and act accordingly.

I generally agree with what is said in the last paragraph of the majority opinion relating to the failure to assert a fraud claim.

While sharply disagreeing with the majority that the case should be reversed on Enumeration of Error 14, it is my belief that this court should give serious attention as to whether the verdict of the jury in its present state can be upheld in accordance with the law. Since the majority is reversing this case, the validity of any verdict and judgment must await another day. I, therefore, respectfully dissent.

I am authorized to state that Judge Benham joins in this opinion and that Judge Carley joins in this opinion only as to the remarks relating to Division 2 of the majority opinion.

DECIDED JULY 8, 1986 —
REHEARING DENIED JULY 29, 1986

*Benjamin Smith, Jr.,* for appellant (case no. 71848).
*George N. Skene,* for appellant (case no. 71849).
*C. Deen Strickland, Michael D. DeVane,* for appellees.