## A90A2357. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY v. AINSWORTH.

(402 SE2d 759)

BIRDSONG, Presiding Judge.

Appellant State Farm Mutual Automobile Insurance Company (State Farm) appeals the order of the state court which granted appellee Ann L. Ainsworth's (Ainsworth) motion for partial summary judgment, awarded appellee $25,000 lost wages, and denied State Farm's motion for summary judgment on the basis that bad faith penalties and punitive damages are issues for jury resolution.

On July 8, 1988, appellee who was the permissive driver of a vehicle insured by State Farm was injured in a collision. The policy contained optional no-fault coverage; appellee was eligible for personal injury protection benefits of $25,000 and medical payment coverage of $5,000 thereunder.

On August 1, 1988, appellee's brother submitted an application for benefits in appellee's behalf upon a State Farm claims form. The application reflected, inter alia, appellant had suffered five broken ribs, three broken vertebrae, and three breaks of the pelvic bone, and on its face, it contained a claim for approximately $30,000 of continuing medical expenses, and a separate claim for $800 lost wages to date. Appellee had not returned to work as of the date of the application. Further, the application apparently did not have any type of medical bills or wage statements attached, and it contains no place thereon where an applicant could make any valid designation or election regarding the priority in which claims are to be paid.

On August 8, 1988, State Farm paid medical providers the amount of $7,620. The record does not clearly establish what medical bills if any were in State Farm's possession on this date. As it was stipulated that only $5,000 of the existing policy coverage was allocated as medical payment coverage, at least $2,620 of the $7,620 amount apparently was paid from available personal injury protection benefits.

On August 12, 1988, State Farm sent its standard employer's wage and salary verification form to appellee's listed current employer. Apparently, on no occasion did State Farm advise either the alleged employer or the appellee that time was of the essence for any reason in responding to this inquiry.

On August 17, 1988, State Farm received medical bills, pertaining to appellee, in an amount which exceeded the remaining policy benefits. (In addition to the injuries listed above, appellee apparently had suffered abdominal and intestinal injuries necessitating a colostomy.)

On September 7, 1988, more than 30 days after the receipt of the application for benefits but about 21 days from the stipulated date of receipt of medical bills, State Farm paid medical providers the re-

maining no-fault benefits of $22,380, thereby exhausting all applicable coverage pertaining to the appellee.

Five days later, on September 12, 1988, State Farm received a relatively ambiguous response from appellee's alleged current employer to their wage and salary verification inquiry.

On November 15, 1988 appellee's attorney sent a letter to State Farm demanding $2,500 loss of earnings and that all optional no-fault coverage be paid in payment of loss of earnings, which were predicted to continue for at least 12 months or more. *Held*:

1. Appellant asserts that the state court erred in granting appellee's motion for partial summary judgment. Resolution of this contention requires consideration of matters asserted in certain of appellant's other enumerations of error.

(a) Appellant asserts, in its first enumeration of error, that the lower court erred in holding "an insured can await payment of medical expenses (to a hospital and physicians identified in the application for benefits) and then request payment of another category of covered losses after benefits have been exhausted." Appellant does not cite a specific part of the record where such holding was affirmatively made, and it is not the function of this court to cull the record in search of error. *Armech Svc. Co. v. Rose Elec. Co.*, 192 Ga. App. 829, 830 (386 SE2d 709). Moreover, the application for benefits, submitted in appellee's behalf, on its face contained a request for payment of both medical expenses and lost wages, and this application was received by appellant before any benefits had been exhausted. Appellant's assertion, as crafted in its first enumeration of error, is without merit.

(b) Appellant asserts in its second enumeration the state court erred in holding that the required "direction to pay" had not been provided by the appellee.

OCGA § 33-34-4 (a) (2) prescribes, inter alia, a minimum no-fault motor vehicle accident insurance coverage to provide "[c]ompensation to insured injured persons without regard to fault up to an aggregate minimum limit of $5,000.00 per insured injured person for . . . (A) [a]ll necessary medical expenses, not to exceed $2,500.00 . . . (B) [e]ighty-five percent of the loss of income or earnings of the insured during disability with a maximum benefit of $200.00 per week" and, certain other compensable expenses not here applicable. OCGA § 33-34-5 (a) pertinently provides: "Each insurer shall also make available on an optional basis the following coverage . . . (1) [a]n aggregate limit of benefits payable without regard to fault up to $50,000.00 per person. Benefits purchased *in excess of* $5,000.00 shall be paid as *determined* by the insured without apportionment to cover any of the following expenses *incurred* by the insured but not compensated for under paragraph (2) of subsection (a) of Code Section 33-34-4 . . . (A) [a]ny expenses of the type described in subparagraph (a) (2) (A)

of Code Section 33-34-4 . . . (B) [e]ighty-five percent of the loss of income or earnings of the insured during disability" and, certain other expenses not here applicable. (Emphasis supplied.)

It is clear on the face of the statute that the insured is statutorily entitled to *determine* the order in which his legitimate no-fault expense claims will be paid, and the state court did not err in so concluding. As the pertinent language of OCGA § 33-34-5 is plain and susceptible of but one natural and reasonable construction, an appellate court has no authority to place a different construction upon it, but must construe it according to its terms. *Ringewald v. Crawford W. Long Mem. Hosp.*, 258 Ga. 302, 303 (1) (368 SE2d 490). The question remains, however, as to how this right should be exercised.

Appellant, citing inter alia *State Farm &c. Ins. Co. v. Penrow*, 142 Ga. App. 463, 466 (236 SE2d 275), asserts that appellee by identifying the healthcare providers who were to be paid in the application for benefits is estopped from challenging appellant's subsequent exhaustion of all optional benefits through the timely payment of these providers. The cases cited by appellant are factually distinguishable from this case. Moreover, the application for benefits, filed in this case upon a form prepared by the appellant State Farm, would reasonably place an insurer on notice the insured was filing both a claim for medical expenses and a claim for lost wages, and that the current aggregate amount claimed by the insured ($30,800) already *exceeded* the total amount of coverage available. In such circumstances, an insurer pays a claim at its peril if it does so without first *diligently* obtaining a priority of payment determination from the insured. In this regard, it was the "clear intent of the legislature in OCGA § 33-34-5 (a) (1)" that the optional no-fault benefit coverage would be utilized in the manner "most beneficial to the insured and the beneficiaries" (*State Farm &c. Ins. Co. v. Acheson*, 182 Ga. App. 218, 219 (1) (355 SE2d 128)), and that an *insured* would be vested with a statutory right to determine the most *beneficial* order in which optional benefits would be used in the payment of legitimate expense claims under OCGA § 33-34-5 (a) (1).

Appellant, however, citing *Strickland v. American Home Assur. Co.*, 186 Ga. App. 425, 426 (367 SE2d 241) and *Jones v. State Farm &c. Ins. Co.*, 156 Ga. App. 230 (274 SE2d 623), contends that as it was required to pay appellee's medical expenses within 30 days of receiving "reasonable proof of the fact and the amount of loss sustained" (see, e.g., OCGA § 33-34-6 (b)), and that having done so to the exhaustion of all applicable coverage it is in effect relieved of all further legal responsibility towards the insured. We cannot agree with this logic, as it would transfer the right of determining claims payment priorities to the insurer in derogation of legislative intent. Moreover, although OCGA § 33-34-6 (b) allows insurers to pay *basic* no-fault

payments "directly to persons or firms supplying necessary products, services, or accommodations to the claimant," this authority must be interpreted in harmony with both OCGA §§ 33-34-4 and 33-34-5. Although " '[i]t is implicit [within OCGA § 33-34-6 (b)] that [basic no-fault] payments may be paid by the insurer to "the person entitled to the benefits," it remains the general rule, however, that "benefits purchased in excess of $5,000 are to be paid as determined by the insured without apportionment." Jenkins & Miller, Ga. Auto. Ins. Law (rev. ed.), Payment of No-Fault Benefits, § 27-4. Accordingly, we find appellant's contention to be without merit.

We need not today decide the legal ramifications upon an insurer who in good faith diligently attempts to obtain a determination from an insured, as to priority of payment, and whether the statutory periods of OCGA § 33-34-6 (b) and (c) either are tolled during such an effort or whether the insurer would have reasonable or probable cause, within the meaning of *Binns v. MARTA*, 250 Ga. 847, 848 (301 SE2d 877), for not paying no-fault claims on time while awaiting the insured's determination. We do not, however, believe the legislature intended either for an insurer to use this situation as a shield to divest an *uninformed* claimant of his statutory right of determination or for an insured to force a *diligent* insurer into a penalty situation by being dilatory in his determination as to priority of payment of competing claims. Of course, procedures might be considered to inform an insured of his right of determination and to obtain his determination at the time an application for benefits is filed. In any event, appellant's unilateral election to exhaust all optional benefits by making payments to medical providers without attempting to obtain the insured's timely determination as to priority of claims payment, does not satisfy its statutory obligation to the insured.

Appellant next asserts that the insured's silence as to payment order justifies payment in the order sufficient proof of claim was received. Appellant's reliance on *Santiago v. Safeway Ins. Co.*, 196 Ga. App. 480 (396 SE2d 506) is misplaced. The facts of this case unlike *Santiago* do not involve an assignment of the right to insurance proceeds to a medical provider. Appellant's reliance upon the hospital lien authority of OCGA § 44-14-470 to establish a priority for lien payment in the absence of a determination under OCGA § 33-34-5 (a) (1) also is without merit. OCGA § 44-14-474 expressly provides that Title 44, Chapter 14, Article 8, Part 8, which includes OCGA § 44-14-470 therein, does *not* "apply to benefits for loss of income or earnings which are provided pursuant to Chapter 34 of Title 33." Thus, OCGA § 44-14-470 could not provide a lien priority over claims for lost wages or income under Chapter 34 of Title 33 (Georgia Motor Vehicle Accident Reparations Act). As appellant's contention that it obtains a right to determine priority of claims payment merely due to the in-

sured's silence runs contrary to the legislative intent of OCGA § 33-34-5 (a) (1) in vesting the insured with such right of determination, it is without merit. As appellant has not enumerated as error, argued or provided any citations of authority as to the issue of waiver of the insured's statutory right of determination, see generally OCGA § 1-3-7, we need not address this issue. *Roberts v. Cotton States &c. Ins. Co.*, 186 Ga. App. 371, 373 (367 SE2d 272); Court of Appeals Rule 15 (c).

(c) Appellant contends that it has not received sufficient information to justify payment of loss of income benefits. The record reflects that the application for benefits filed on appellee's behalf contained a claim for $800 lost wages or salary, it asserted that the loss resulted from appellee's injury, and it asserted that appellee had been disabled since July 8, 1988, and had not yet returned to work. The application further revealed the names and addresses of appellee's alleged current employer, appellee's former employment history, and the alleged dates of appellee's employments. The wage and salary verification form in the record does not expressly support appellee's claim for loss of wages; rather, it reflects that appellee was an independent contractor who performed in-home patient sitting for the alleged employer's mother on an "as needed basis."

At trial, lost wages and earnings are not recoverable where the evidence does not show the amount of the loss with reasonable certainty, and lost wages and earnings cannot be recovered if the evidence permits the jury to no more than speculate or guess as to the amount of loss. See generally *Allison v. Auto-Owners Ins. Co.*, 256 Ga. 446 (349 SE2d 682); *Beal v. Braunecker*, 185 Ga. App. 429 (5) (364 SE2d 308); *Rosser v. Atlanta Coca-Cola Bottling Co.*, 162 Ga. App. 503 (1) (291 SE2d 109), rev'd on other grounds, *Atlanta Coca-Cola Bottling Co. v. Rosser*, 250 Ga. 52 (295 SE2d 827). However, OCGA § 33-34-6 (b) provides in pertinent part that benefits required to be paid without regard to fault "are overdue if not paid within 30 days after the insurer receives reasonable proof of the fact and the amount of loss sustained." "OCGA § 33-34-6 (b) is silent as to what constitutes reasonable proof of the fact and the amount of loss sustained. In *Jones v. State Farm &c. Ins. Co.*, 156 Ga. App. 230 (274 SE2d 623) (1980), we held that the date on which an insurer should be deemed to have received reasonable proof of the fact and the amount of loss sustained by its insured is that date upon which the insurer receives *sufficient proof* from the insured *to enable the insurer to verify or disprove, through the exercise of reasonable diligence, the basic components of the insured's claim.* Thus, OCGA § 33-34-6 (b), as interpreted by *Jones*, does not require a claimant to submit proof of loss of such exactitude as would verify the claim in and of itself. The proof of loss submitted need only be such as would enable the insurer

to verify the basic components of the claim through the exercise of reasonable diligence." (Citations and punctuation omitted.) *Strickland v. American Home &c. Co.*, supra at 427-428; *Hufstetler v. Intl. Indem. Co.*, 183 Ga. App. 606, 607 (359 SE2d 399).

As a general rule, when claimant asserts in an application for benefits a claim for lost wages or income, and in support thereof lists thereon a description of injuries received, place of hospitalization, date and duration of the asserted disability, the date, duration, and average wage or salary of asserted current employment, amount of lost income to date, history of past employment, and accurate names and addresses or telephone numbers of asserted current and former employers, this information will constitute sufficient proof, within the meaning of *Strickland* and *Hufstetler*, from which an insurer *with the exercise of reasonable diligence* could verify or disprove the basic components of the claim. Such information was provided in this case. However, the wage and salary verification form received by the insurer from the alleged employer was relatively noncommittal and stated inter alia that appellee was an independent contractor who worked on an "as needed basis." This information arguably could tend either to verify or dispute appellee's claim for lost wages, as that claim is crafted in the application for benefits, depending upon whether the reasonable inferences to be drawn therefrom were drawn to the benefit of the appellant or to the appellee. On summary judgment, the party opposing a motion for summary judgment is entitled to a favorable construction of the evidence and the *benefit* of all reasonable inferences and conclusions. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594 (370 SE2d 843). When appellant is given such benefit, it may reasonably be inferred from the information reported in the wage and salary verification form that appellee was not working for the continuous period of March 1988 to July 7, 1988, as asserted in the application for benefits. This factual inference and the reasonable conclusion which could be drawn from the noncommittal manner in which the alleged employer responded would tend to cast doubt on the credibility of appellee's lost wages claim, as " 'a person must be employed at the time of his injury to be entitled to compensation for lost earnings under the Georgia Motor Vehicle Accident Reparations Act (cit.), and the same rule applies even though a person's unemployment is only temporary.' " *Aetna Cas. &c. Co. v. Revere*, 160 Ga. App. 316, 317 (287 SE2d 251).

But whether appellant with the exercise of *reasonable diligence* could have verified timely the basic components of appellee's claim for lost wages normally would be an issue for jury determination. We see no reason to hold otherwise in this instance, particularly as the evidence of record includes but is not limited to the fact the employer's wage and salary verification inquiry was not dated until Au-

gust 12, 1988, 11 days after the application for benefits was submitted and four days after $7,620 had already been paid to medical providers, and that neither the claimant nor the alleged employer was advised that time was of the essence in response thereto.

Thus, we conclude a genuine issue of material fact exists regarding the adequacy of appellee's claim for lost wages under the test prescribed by *Strickland, Hufstetler,* and *Jones.*

(d) Appellant asserts the lower court erred in holding that plaintiff is entitled to lost wage payments in the amount of $22,500. We agree. No facts exist in the record, as would be admissible in evidence establishing appellant suffered a loss of wages in this particular amount. OCGA § 9-11-56.

"If a policy of insurance is issued it must contain the coverages of [OCGA § 33-34-4] and may contain the coverages of [OCGA § 33-34-5] at the election of the insured." *Hall v. State Farm &c. Ins. Co.,* 254 Ga. 633, 634 (331 SE2d 530). Appellee in essence asserts that pursuant to OCGA § 33-34-4 (a) (2) (A) there exists under the mandatory minimum or basic no-fault coverage of the policy a $2,500 ceiling on medical expenses, but that under the precedent of *Glover v. Grogan,* 162 Ga. App. 768, 772 (292 SE2d 465), no ceiling exists for loss of income or earnings except for the aggregate minimum or basic no-fault limit of $5,000 per insured injured person. See generally Jenkins & Miller, supra at §§ 24-3; 24-5; 24-6; 24-15; 25-3; and 25-4. Thus, appellee contends the portion of the basic or minimum no-fault coverage paid to the medical providers in excess of the $2,500 ceiling was paid contrary to law. Appellee also asserts that under OCGA § 33-34-5 (a) (1) she is entitled to designate how the benefits are to be paid, that under *Acheson,* supra, she is entitled to utilize the benefits in a manner most useful to her, and that she elected to have her benefits paid in the form of lost wages. Thus, appellee concludes the order granting partial summary judgment in the amount of $22,500 should be affirmed. This is a misconstruction of no-fault automobile insurance law. Appellee is not entitled to a windfall merely because she elects to have her benefits paid in a certain *priority.* OCGA §§ 33-34-4 (a) (2) (B) and 33-34-5 (a) (1) (B) provide, as therein stated, for compensation of 85 percent of the *loss* of income or earnings of the insured during disability; and, OCGA § 33-34-6 provides that no-fault benefits shall be payable monthly as *loss accrues.* Thus, it was the legislature's intent that under basic or minimum and optional no-fault coverage an insured is entitled to receive compensation for income or earnings actually *lost* due to injury, and payable monthly in accordance with the applicable statute as such loss accrues. The record fails to establish that there exists no genuine issue of material fact regarding the actual loss of income or earnings accrued in the amount of $22,500, and also fails to establish appellee is entitled to a

judgment as a matter of law to such an amount. OCGA § 9-11-56 (c).

2. Appellant, relying upon *Leonaitis v. State Farm &c. Ins. Co.*, 186 Ga. App. 854 (368 SE2d 775), asserts that the trial court erred in failing to grant summary judgment as there exists an absence of any documentation to substantiate a claim for lost income. We disagree. *Leonaitis*, supra, is factually distinguishable from this case. In *Leonaitis*, the record contained no evidence substantiating the claim of income loss beyond claimant's salary from the corporation of which he was president and majority stockholder. In this case, appellee's claim for lost wages in the application for benefits, coupled with the stipulation of the parties as to the clearly disabling serious injuries she sustained and her hospitalization from July 8, 1988 to August 13, 1988, and the partially corroborating information in the wage and salary verification to the effect that she did in fact work as an independent contractor on an as-needed basis as a patient sitter for her alleged employer's mother, was sufficient to create a genuine issue of material fact as to the issue of whether loss of wages had occurred. See Division 1 (c) above.

3. Appellant asserts that as the facts do not support a finding of bad faith on its part, the trial court erred in failing to grant it summary judgment on this issue. "While ordinarily the question of the insurer's good faith or lack thereof is one of fact for the jury, where there is no evidence of bad faith and/or where the evidence on the issue of liability is so close as to demand a finding of good faith, the issue can be decided as a matter of law." *Strickland*, supra at 427; compare *International Indem. Co. v. Collins*, 258 Ga. 236, 238 (367 SE2d 786).

Appellee, however, relies upon *Insurance Co. of N. America v. Smith*, 189 Ga. App. 353 (375 SE2d 866) (record shows insurer did not seek any further proof or inform the claimant that further proof would be needed) and *Hufstetler*, supra, as establishing a duty of insurer to exercise reasonable diligence to verify the basic components of a claim. See *Insurance Co. of N. America v. Smith*, 183 Ga. App. 266 (2) (358 SE2d 658). The evidence in this record reflects certain delay on the part of the insurer in promptly obtaining wage and salary verification. The record also reflects that merely seven days after the application for benefits was filed a $7,620 benefit payment was made directly to medical providers *before* the insurer even signed the wage and salary verification form. Further, the record is devoid of any showing that appellant ever sought to inform the alleged employer or the claimant of the necessity for prompt wage and salary verification or of the necessity of other additional proof. Nor did appellant seek to obtain claimant's determination as to priority of benefit payment. Thus, the facts of this case are clearly distinguishable from those in *Equitable Gen. Ins. Co. v. Johnson*, 166 Ga. App. 215 (303 SE2d 757).

We find based on the posture of the record that a genuine issue of material fact exists as to appellant's good faith within the meaning of OCGA § 9-11-56 (c).

Appellant's remaining assertions are without merit.

*Judgment denying defendant's motion for summary judgment is affirmed; judgment granting plaintiff's motion for partial summary judgment is reversed. Banke, P. J., and Cooper, J., concur.*

DECIDED FEBRUARY 12, 1991 —
REHEARING DENIED FEBRUARY 27, 1991 —

*Harper, Waldon & Craig, Thomas D. Harper*, for appellant.
*Dietrick, Evans & Scholz, William P. Evans*, for appellee.

