A91A1599, A91A1600. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY v. JINKS; and vice versa.
(416 SE2d 539)

BIRDSONG, Presiding Judge.

This is a suit against an insurer for bad faith claims, attorney fees and punitive damages for failure to pay PIP insurance claims within 30 days and 60 days pursuant to OCGA § 33-34-6. Plaintiff Mary Lou Jinks had an automobile collision on August 18, 1986. There was no police report of an injury. Jinks continued her activities of the day, and did not consult a health care professional until two weeks later. She did not file claims under her no-fault insurance coverage for medical expenses and lost wages until December 19, 1988, two years and four months after the collision. She had sustained other accidents in 1985 and 1987. The claims for medical expenses totalling $2,983.95 were attended by lists of medical expenses and prescription drugs showing expenses from January 1986, before this accident, to June 1988. The insurer on January 11, 1989, replied that the claim shows Jinks' medical expenses were paid by a Health Maintenance Organization (HMO) and that the insurer was required to pay only those expenses "incurred" by Jinks; the insurer asked for a re-submittal based on the expenses which Jinks "incurred" for this accident. The insurer also stated its records showed Jinks had been involved in other auto accidents on October 1985, and February 1987; the insurer asked the attorney to "please submit incurred expenses generated by the 8-18-86 accident only."

The record shows that the attending physician of the HMO left the practice in 1988 and apparently could not be found and consequently could not attest to Jinks' disability as required by the insurer

---

for proof of lost wages. Also, Jinks' place of employment and her employment records were destroyed in a fire after this 1986 accident.

The trial court granted summary judgment to Jinks as to medical expenses in the claim amount of $2,983.95, plus bad faith penalties of 25 percent and attorney fees pursuant to OCGA § 33-34-6 (b), and punitive damages pursuant to OCGA § 33-34-6 (c), with the question as to amount reserved for trial. The trial court denied Jinks' motion for summary judgment as to State Farm's failure to pay her entire lost wages claim within 30 days. The trial court also denied State Farm's motion for summary judgment as to all claims. Both parties appeal. *Held*:

## Case No. A91A1599

1. OCGA § 33-34-6 (b) in effect when these claims were made provides: "Benefits required to be paid without regard to fault shall be payable monthly as loss accrues. The benefits are overdue if not paid within 30 days after the insurer receives reasonable proof of the fact and the amount of loss sustained. . . . In the event the insurer fails to pay each benefit when due, the person entitled to the benefits may bring an action to recover them and the insurer must show that its failure or refusal to pay was in good faith, otherwise the insurer shall be liable for a penalty not exceeding 25 percent of the amount due and reasonable attorney's fees." We have held that the burden of proof to show unreasonableness of the claims, or a good faith reasonable ground for contesting the claim, is on the insurer. *Bituminous Cas. Corp. v. Mowery*, 145 Ga. App. 45 (244 SE2d 573); *Gillem v. MARTA*, 160 Ga. App. 393 (287 SE2d 264).

The trial court found the sole reason State Farm declined to pay medical expenses was that they were not "incurred" by Jinks but were paid by the HMO; the trial court found this excuse to be without merit and concluded the failure to pay was in bad faith, for "the reasonableness of proof of medical bills in an amount exceeding $2,000 has not been disputed."

This latter finding is not supported by the record. State Farm declined to pay medical expenses not *merely* because the expenses were paid by an HMO, but because the lists of medical expenses and prescriptions obviously included expenses incurred prior to and long after the date of this accident, and were confused; and because the costs of the services provided by the HMO were mere "estimates" inasmuch as the services provided to Jinks were paid directly by the HMO.

The insurer asserts that expenses paid by an HMO are not "incurred" by the insured even if the insured has paid a fee or premium payment to obtain the HMO membership. We are inclined to think

that an HMO membership for which the insured or her employer pays a premium is not different in principle from an ordinary medical insurance policy for which a premium is paid, but there is reason to debate the matter in view of the legislature's use of the word "incurred" in § 33-34-6 (b) and in view of the fact that with an HMO, medical services are "provided" and no liability actually is "incurred" in the sense that because the medical services are provided by the HMO, the HMO member is not liable to pay for those services. Since the member pays a fee (premium) to join an HMO, it cannot really be said the services paid by an HMO are free of cost, as was the case in *United States of America v. Travelers Indem. Co.*, 253 Ga. 328, 329 (320 SE2d 164), but neither is the full cost for the individual services really "incurred." The matter can be debated, and it is sufficiently unclear that the legislature may wish to address it, so it cannot be said that as a matter of law the insurer acted in bad faith to raise this issue in defense of Jinks' claims. The jury may decide this question.

As to the other reasons the insurer did not pay in 30 to 60 days, it is a fact evident on the face of the record that Jinks' claims are confused, multiplicitous and mingled with expenses which were as easily attributable prima facie to Jinks' other collisions in 1985 and 1987. State Farm complains also that although technically Jinks' claims were not untimely under the contract of insurance, her great delay in submitting claims for the accident of August 18, 1986, put State Farm at a disadvantage in verifying her claims. We do not doubt this is so. That this claim was so long in being filed could only increase the practical dilemma faced by the insurer in having to pay in 30 days.

On the claim form submitted by Ms. Jinks for the 8-18-86 accident, she simply said "see attached" in answer to the question "amount of medical bills to date." Attached is a welter of expenses, some dating *before* the 8-18-86 accident as well as *after* the *February, 1987* accident. Moreover, on the form signed by her to authorize medical providers to disclose information, she left this statement blank entirely: "This information is authorized to permit processing of a claim I have made against [insurer] arising out of an accident or occurrence on _____, 19__." State Farm promptly replied to Ms. Jinks' attorney: "Our records indicate Ms. Jinks has been involved in multiple auto accidents, Oct. 1985, Aug. 1986, and Feb. 1987. Please submit incurred expenses generated by the 8-18-86 accident only. Expenses for other accidents should be sent to the appropriate claim representatives handling those files." In reply to this request for clarification, Ms. Jinks' attorney wrote: "Please be advised that all of the documentation we have provided relates to Mrs. Jinks' accident of August, 1986. She had recovered from the earlier accident as of that date, and it is my understanding that the subsequent accident in 1987

did not involve any personal injury. I believe if [State Farm] had bothered to review the medical documentation we provided . . . [you] would have figured that out."

We have reviewed the documentation submitted by Jinks' attorney and we have not "figured that out." The lists of medical expenses contained items from July 29, 1985, long before the 8-18-86 accident, and most of the expenses including HMO visits appear to have occurred after the February 1987 accident. No attempt seems to have been made by Jinks' attorney to plainly distinguish and submit only claims for the 8-18-86 accident, except the attorney's adjuration to "figure it out"; no *support by reasonable proof* was submitted, except the attorney's "understanding" that the medical expenses appearing after February 1987, were not engendered by the February 1987 accident. We do not find in these medical claims any statement or notation by a health care professional that the vast majority of these expenses, which were sustained after March 2, 1987, had nothing to do with the February 1987 accident which State Farm's records showed had occurred. Such a conclusion could not reasonably be made from the fact that Jinks had not filed a claim for medical expenses and wages for the February 1987 accident, for she did not file this claim for her August 1986 accident until more than two years had passed. Conceivably Jinks might, years hence, file claims for the February 1987 accident and say this attorney's "understanding" that she sustained no physical injury in that accident was wrong, and thereupon seek to hold the insurer liable for not verifying that "understanding" years before.

Although we have held repeatedly that the burden of proving reasonableness of a failure to pay such claims rests upon the defendant insurer in a suit for penalties and attorney fees under § 33-34-6, the statute places the *initial* burden on the insured to submit claims supported by "reasonable proof," and the duty to pay accrues only when such "reasonable proof of the *fact and the amount* of the loss sustained" is *submitted by the insured. Jones v. State Farm &c. Ins. Co.*, 156 Ga. App. 230, 235 (274 SE2d 623). The date such reasonable proof is received is the "date upon which the insurer receives sufficient proof *from the insured* to enable the insurer to verify or disprove, through the exercise of reasonable diligence, the basic components of the insured's claim." Id. at 235.

Moreover, while on the insurer's motion for summary judgment, the insurer as movant has the burden to establish the non-existence of any genuine issue of fact, when the insurer makes a prima facie showing that it is entitled to summary judgment as a matter of law, *the burden of proof shifts to the respondent* insured (Jinks) to come forward with rebuttal evidence or suffer adverse judgment. *Leonaitis v. State Farm &c. Ins. Co.*, 186 Ga. App. 854, 855-856 (368 SE2d 775).

This record establishes that *"the fact and the amount"* of losses claimed for medical expenses is in dispute as well as being unsupported by reasonable proof as required by OCGA § 33-34-6(b) in the first instance. Jinks did not submit a claim supported by reasonable proof when she sent a welter of confusing lists of costs as easily attributable on their face to other accidents, and then telling the insurer to "figure it out." The insurer's duty to verify or disprove the claim with reasonable diligence (*Jones,* supra; see *State Farm &c. Ins. Co. v. Ainsworth,* 198 Ga. App. 740, 744 (402 SE2d 759)) arises only after the insured submits reasonable proof *of the fact* and the amount of loss sustained. *Jones,* supra; *State Farm &c. Ins. Co. v. Ainsworth,* supra. This necessarily means, in this case, the insured had to submit reasonable proof not only of the *amount* claimed for the August 1986 accident, but of the *fact* that those amounts claimed arose out of the August 1986 accident and not from the 1985 accident or the February 1987 accident. An issue of material fact remains as to the reasonableness of the insurer's failure to pay upon such claims in this case.

By finding that the reasonableness of proof of medical bills *"in an amount exceeding* $2,000" has not been disputed, the trial court proved its own uncertainty, for evidently it was unable to express an opinion as to precisely what amount and which expenses the insurer could safely have paid $2,000 for the August 1986 accident so as not to be penalized for failure to pay within 30 to 60 days a claim supported by reasonable proof. The insurer cannot be expected to guess what the trial court cannot ascertain, and certainly the jury is not required to guess. *State Farm &c. Ins. Co. v. Ainsworth,* supra.

We note that OCGA § 33-34-6 prefaces itself by stating that "[p]ayment of benefits . . . must be made *periodically on a monthly basis as expenses are incurred. . . .*" (Emphasis supplied.) Id. at subparagraph (a). It then asseverates that its purpose is to ensure that "[b]enefits required to be paid without regard to fault shall be payable *monthly as loss accrues.*" (Emphasis supplied.) Id. at subparagraph (b). The statute is intended to provide a continuous *contemporaneous* 30-day source of compensation *"as loss accrues."* In this case, the insured made a barrage of claims more than *two years after the accident,* accompanied by confusing lists of expenses apparently related to other accidents; the insured did not make a claim for compensation "as loss accrues." But for the fact that the statute does not restrict the penalty to cases where the claims are made *contemporaneously to the losses as they accrue,* we would say the reason for awarding a penalty and damages for failure to pay, within 30 and 60 days, a claim made up to two-and-one-half years after the first "loss accrued" diminishes almost to the point of extinction.

Since there is a jury question as to whether Jinks' claims were

supported by reasonable proof, we reverse the judgment awarding 25 percent penalty for failure to pay within 30 days under OCGA § 33-34-6 (b); and we reverse the award of punitive damages under OCGA § 33-34-6 (c) for failure to pay within 60 days.

2. The trial court erred in denying State Farm's motion for summary judgment as to lost wages under the cases cited above. In the first instance, the claimant has the duty to submit reasonable proof of her lost wages claim; otherwise, the insurer's duty to pay never arises. See OCGA § 33-34-6 (b). The facts offered by each party in the exercise of their respective burdens of proof on appeal are in complex dispute, as evidenced by the amount of argument and space they devote to the advancement of their assertions of fact. Within 30 days of the original claim date, the insurer by letter of January 11, 1989, stated: "In order to consider your client's wage loss claim we will need the attached Wage and Salary forms completed by the respective employers. We will also need statements of disability from her attending physician for the time period claimed." Jinks did not return these forms until March 16. On April 6, State Farm sent Jinks a check for $145.35, representing 38 hours lost from Jinks' second place of employment from February 1987, to May 1987. State Farm declined to pay for wages lost immediately after the accident because the statement by Jinks' employer at her first place of employment (which burned down after the accident) could not be verified without a statement of disability by the attending physician; nevertheless, State Farm said: "We will be glad to consider payment of these lost wages upon receipt of disability confirmation." It seems that Jinks could not provide a statement of disability because in 1988, two years after the accident, the physician removed herself to parts unknown. Therefore, Jinks' remaining claims for lost wages were not supported by reasonable proof and no issue of fact remains as to the reasonableness of the insurer's failure to pay them. State Farm is entitled to summary judgment on this issue.

### Case No. A91A1600

For the reasons stated as to Case No. A91A1599, entitling State Farm to a jury trial as to the issue of failure to pay medical expenses and that it was entitled to summary judgment as to failure to pay lost wages, it follows that Jinks was not entitled to summary judgment on any of her claims.

*Judgments reversed and cases remanded for trial. Sognier, C. J., Beasley, Cooper, and Andrews, JJ., concur. Carley, P. J., Pope, and Johnson, JJ., concur in part and dissent in part. McMurray, P. J., disqualified.*

Pope, Judge, concurring in part and dissenting in part.

1. The majority has reversed the trial court's order granting summary judgment to plaintiff on her claim against State Farm for reimbursement of medical expenses in the amount of $2,983.95. Yet the majority's opinion fails to address the issue raised by State Farm in this appeal as to whether a no-fault insurer is liable for medical expenses incurred by an insured at an HMO. (The majority states they are "inclined to think that an HMO membership for which the insured or her employer pays a premium is not different in principle from an ordinary medical insurance policy for which a premium is paid," but this dicta falls short of answering the issue raised by State Farm in its appeal.) This issue must be addressed before this case is remanded for trial.

State Farm relies on *United States v. Travelers Indem. Co.*, 253 Ga. 328 (320 SE2d 164) (1984) to support its assertion that no-fault carriers are not liable for the reasonable value of medical services incurred by an insured at an HMO. In *Travelers*, the United States attempted to recover from the no-fault carriers of insured servicemen the reasonable value of medical care provided the servicemen and their families after they had been treated in military hospitals following motor vehicle accidents. The Supreme Court concluded that the legislature intended a no-fault carrier to be required to pay only those expenses which are "incurred" by an insured. Thereafter, the Supreme court provided a definition of "incurred," by stating: "In order for an insured to incur medical expenses which would trigger the no-fault carrier's duty to pay, he must have either paid them or have become liable for them. [Cits.]" Id. at 329. Because the United States provided medical treatment to the insured servicemen and their families without any cost to the servicemen, the court concluded the insured servicemen had not "incurred" expenses within the meaning of OCGA § 33-34-1 et seq. Thus, the no-fault carriers in *Travelers* were not liable for the payment of no-fault benefits under these circumstances.

State Farm argues that just as servicemen are not liable for payment of medical expenses provided by United States military hospitals, HMO members are similarly not liable for payment of medical expenses provided by HMOs. However, this argument clearly ignores the fact that HMO members must pay monthly premium payments for their membership and, in certain circumstances, co-payments at the time medical services are provided. Because medical services are not provided without *any* cost to HMO members, it simply does not follow that medical services provided by HMOs are received free of cost by members. An HMO member's premium payments are sufficient to meet the requirement set forth in *Travelers* that an insured "incur" expenses within the meaning of OCGA § 33-34-1 et seq. State

Farm is therefore liable to plaintiff for the reasonable value of medical services provided by her HMO, and a question of fact remains only as to the amount of State Farm's liability. To the extent the majority's opinion may be interpreted by State Farm as a determination that it is not liable for *any* of plaintiff's medical expenses incurred at the HMO, I must dissent.

2. I also disagree with the majority's conclusion that State Farm refused to pay plaintiff's claims because plaintiff failed to provide reasonable proof of medical expenses (i.e., her claims are "confused, multiplicitous and mingled with expenses which were as easily attributable prima facie to Jinks' other collisions in 1985 and 1987"). The exhibits attached to plaintiff's claim were medical records and forms prepared by plaintiff's HMO. Although the HMO documents do contain some charges pertaining to services and medications provided plaintiff prior to the 1986 accident, the record contains letters from plaintiff's attorney providing State Farm with the clarifications and explanations State Farm requested. Most importantly, however, the record reveals State Farm refused to pay *any* of the medical claims submitted by plaintiff, even those clearly pertaining to the 1986 accident. OCGA § 33-34-6 (b) provides, that "[i]f reasonable proof is not supplied as to the entire claim, the amount supported by reasonable proof is overdue if not paid within 30 days after proof is received by the insurer." "Thus, [State Farm] may have been justified in denying or delaying payment for any bills which purported to be for treatment attributable to the [1985 or 1987 accident], but it was not necessarily justified in denying or delaying payment for any other bills which purported to be for treatment attributable to the [August 1986 accident]. [Cit.]" *Baker v. J. C. Penney Cas. Ins. Co.*, 192 Ga. App. 134, 137 (2) (384 SE2d 233) (1989). Since State Farm denied *all* of plaintiff's medical claims, it is my opinion it must have done so because of its misplaced reliance on *Travelers*, rather than because the claim forms were confusing. However, I must agree with the majority's conclusion that the issue of State Farm's good faith in its refusal to pay plaintiff's medical claims based upon its reliance on *Travelers* is one for jury resolution.

3. I must also dissent to Division 2 of the majority opinion determining that State Farm was entitled to summary judgment on plaintiff's claim for lost wages. The majority contends that because plaintiff could not provide a disability statement from her treating physician as requested by State Farm, her claim for lost wages, as a matter of law, was not supported by reasonable proof. However, "OCGA § 33-34-6 (b) 'does not require a claimant to submit proof of loss of such exactitude as would verify the claim in and of itself. The proof of loss submitted need only be such as would enable the insurer to verify the basic components of the claim through the exercise of

reasonable diligence. (Cit.)' [Cit.]" *Baker v. J. C. Penney Cas. Ins. Co.*, supra at 136. Plaintiff, therefore, need only have submitted *reasonable proof* of the fact and amount of her loss sustained, not the *exact proof* requested by State Farm. Plaintiff having alleged in support of her motion for summary judgment that she submitted reasonable proof to State Farm of her claim for lost wages, the burden shifted to State Farm to establish why the physician's disability statement was crucial to its consideration of her claim, especially in light of the evidence showing State Farm's payment of a portion of plaintiff's lost wage claim (38 hours of lost wages) without the benefit of the requested disability statement. State Farm having failed to meet its burden, a question of fact remains as to whether reasonable proof of plaintiff's claim for lost wages was properly submitted to State Farm. Accordingly, the trial court did not err in denying plaintiff's and defendant's motions for summary judgment on the claim for lost wages.

I am authorized to state that Presiding Judge Carley and Judge Johnson join in this opinion.

DECIDED MARCH 4, 1992.

*Harper, Waldon & Craig, Thomas D. Harper, Frank Boucek III*, for appellant.

*Van Gerpen, Hoffman & Harris, Frank P. Harris*, for appellee.