S92G0882. VLAHOS v. SENTRY INSURANCE COMPANY.
(426 SE2d 350)

Sears-Collins, Justice.

We granted certiorari in this case to determine whether an employee who has been continuously employed before disability and whose income is accruing is entitled to benefits for the loss of income pursuant to OCGA § 33-34-4 (a) (2) (B). *Vlahos v. Sentry Ins. Co.,* 203 Ga. App. 540 (417 SE2d 180) (1992). We conclude that such an employee is entitled to recover the amount of the accrued income that the employee can prove with reasonable certainty would have been paid if not for the employee's injury.

The facts in the present case are as follows: The appellant, Angie Vlahos, was a full-time employee of All Auto Parts from 1980 to 1988, when it closed. Vlahos and her sister-in-law took over the business in 1983, and operated the business as a partnership until it was incorporated in 1986. From 1984 until it closed in 1988, All Auto Parts experienced drastically decreasing sales and similarly increasing losses. In 1986, Vlahos was paid a salary of $7,665 for the year. For the years 1987 and 1988, the corporate books of All Auto Parts reflect that a salary was being accrued for Vlahos at a rate of $300 per week. The company, however, was never in a financial position to pay Vlahos the accrued salary.

On October 29, 1988, Vlahos sustained injuries in an automobile accident and was physically incapable of returning to work. All Auto Parts closed shortly after this accident. The accountant for All Auto Parts testified that it had been the hope of Vlahos, if All Auto Parts had remained in business, to sell the inventory of the corporation, realize a profit, and collect her salary. No evidence was offered to show whether the inventory would have been sufficient to accomplish that goal.

Vlahos subsequently instituted this action against Sentry to obtain, among other things, lost-income benefits under § 33-34-4 (a) (2) (B). Sentry claimed that Vlahos was not entitled to lost-income benefits because at the time of the accident she had no income. The trial court agreed and granted summary judgment to Sentry. The Court of

Appeals affirmed, in a whole-court decision. The majority found that, as a matter of law, Vlahos failed to show with reasonable certainty that she lost any income, because All Auto Parts' history of profitability did not afford her a reasonable expectation that the accrued salary would ever be paid.

Three of the four dissenting judges on the Court of Appeals concluded that whether All Auto Parts would ever be able to pay Vlahos' salary was irrelevant to the issue of Vlahos' right to recover lost income. These dissenters concluded that, because Vlahos had been continually employed and because there was no evidence the accrued income was fraudulent, Vlahos was entitled to recover lost income benefits as a matter of law.

1. The first issue for resolution arises from the following, often-quoted, test for determining if a plaintiff is entitled to recover lost income.

> To recover benefits for "loss of income or earnings . . ." pursuant to OCGA § 33-34-4 (a) (2) (B), an insured is required merely to establish with "reasonable certainty" the fact and amount of such lost income or earnings, and this he may accomplish *either* by showing that he previously had accepted an offer of income-generating employment for the period in question *or* by showing "a continuous pattern of employment prior to the period of disability."

(Emphasis in original.) *Auto-Owners Ins. Co. v. Sapp*, 185 Ga. App. 661, 662 (365 SE2d 286) (1988). Accord *Allison v. Auto-Owners Ins. Co.*, 256 Ga. 446, 447 (349 SE2d 682) (1986); *Midland Ins. Co. v. West*, 175 Ga. App. 419, 420-421 (333 SE2d 628) (1985).

Vlahos contends that, under this test, she is entitled to recover lost income benefits as a matter of law based solely on the evidence of her continuing pattern of employment, irrespective of whether that employment was generating any income. We disagree with this proposition.

Although *West*, supra, 175 Ga. App.; *Sapp*, supra, 185 Ga. App.; and *Allison*, supra, 256 Ga., have language that might suggest such a rule, the language in those cases concerning a continuous pattern of employment must be read in view of the proposition which those cases say the continuous pattern of employment is offered to prove — both the fact and the amount of a plaintiff's lost income. Thus, properly read, the phrase "continuous pattern of employment" must encompass not only the fact of employment but also that that employment is generating income.

Moreover, the cases that have given rise to the phrase "continuous pattern of employment" mandate this conclusion. In *Leonard v.*

*Preferred Risk Mut. Ins. Co.*, 247 Ga. 574, 575 (277 SE2d 675) (1981), this Court first stated that a plaintiff could carry his or her burden of proving the fact and amount of lost income by showing "a continuous pattern of employment." We did not state that the employment had to be income-generating. However, we relied on *State Farm Mut. Auto. Ins. Co. v. Smith*, 245 Ga. 654 (266 SE2d 505) (1980), for our holding in *Leonard*, and in *Smith* we held that, even though the plaintiff had been continuously employed by her husband's business, she was not entitled to lost-income benefits because she had not been generating income with her work, id. at 656. *Leonard* thus must be read as implicitly requiring that the continuous employment be income-generating. *Leonard* served as the basis of the language concerning continuous employment in *West*, supra, 175 Ga. App.; *Sapp*, supra, 185 Ga. App.; and *Allison*, supra, 256 Ga.

Finally, it would be inconsistent to have a rule that a plaintiff can obtain lost income benefits based on an *offer* of employment only if that employment is income-generating, *Sapp*, supra, 185 Ga. App. at 662, but not to place a similar requirement on a plaintiff seeking benefits based on pre-disability employment.

For these reasons, we conclude that a plaintiff must establish that his or her continuous employment was income-generating.

2. The next issue is whether, as Vlahos contends, the accrual of income should be considered income-generating, regardless of whether that accrued income would have ever been paid. In this regard, we conclude that a plaintiff must establish with reasonable certainty that, but for the accident, the accrued income would have actually been paid. To hold otherwise would require an insurer to pay lost income benefits even in a case in which the evidence established that the plaintiff's employer would never have paid the plaintiff his or her accrued income. In such a case, the insurer would be paying benefits for income not actually lost by the plaintiff. Such a result is contrary to the purpose of lost-income cases, which is to permit a plaintiff to recover income actually lost due to injury. *State Farm Mut. Auto. Ins. Co. v. Ainsworth*, 198 Ga. App. 740, 746 (402 SE2d 759) (1991); Appleman, Insurance Law and Practice, Vol. 8D, § 5181.35 (1981).

The dissent erroneously relies on *West*, supra, 175 Ga. App. at 421, for the proposition that a plaintiff may recover lost-income benefits if he or she is "entitled" to wages from his or her employer. First, the use of the word "entitlement" in *West* clearly refers to whether the plaintiff is entitled to lost-income benefits under the law because he or she has offered the necessary proof to recover such benefits and not to whether the plaintiff is entitled to wages from his or her employer. Next, the dissent fails to note that in *West* the Court of Appeals stated that a plaintiff is not entitled to recover lost-income benefits if he is " ' "receiving no income" at the time of the injury,' " id.

at 420, and that West was not entitled to recover lost-income benefits because "he had not shown with reasonable certainty that he has incurred a loss of income or earnings which, if not for the accident and alleged disability, he would otherwise have collected," id. at 421. *West*, therefore, does not stand for the proposition that a plaintiff may recover lost-income benefits solely on the ground he or she was entitled to wages from his or her employer.

Furthermore, *Vansant v. Allstate Ins. Co.*, 142 Ga. App. 684 (236 SE2d 858) (1977), does not support the dissent's "entitlement" theory. In that case, Mr. Vansant was killed in an automobile accident. At the time of his death, he was receiving income as a retired federal employee. Under OCGA § 33-34-4 (b) Mr. Vansant's widow sought survivor's benefits based on lost income, but the insurance company refused to pay on the ground the "loss of income or earnings" language in the no-fault statute, § 33-34-4 (a) (2) (B), covered only the loss of wages from employment. The Court of Appeals disagreed and held that loss of income included income lost from sources other than earned wages. Id. at 686-687. *Vansant*, therefore, did not involve the question whether Mrs. Vansant should be granted lost-income benefits on the ground she was "entitled to wages" Mr. Vansant was not then receiving; Mr. Vansant was actually being paid his retirement salary at the time of his death.

Similarly, the dissent's reliance on *American Interstate Ins. Co. v. Revis*, 156 Ga. App. 204 (274 SE2d 586) (1980), is misplaced. That case established the rule that a plaintiff who has accepted an offer of income-generating employment is entitled to lost-income benefits. See *Leonard*, supra, 247 Ga. at 575. In such a situation, it is not the plaintiff's entitlement to wages from the employer that entitles the plaintiff to recover, because, in fact, a plaintiff is not entitled to wages from an employer for whom he has never worked. Instead, in such cases, the plaintiff is entitled to lost-income benefits because, by proof of the acceptance of an offer of income-generating employment, he has established a loss of income that, but for the accident, he would have collected.

Finally, the rule we establish today will delay the payment of lost-income benefits in only rare cases. Since no-fault has been in existence in Georgia, this case is the first one raising such issues involving accrued income and significant non-profitability of a company. Moreover, delay in such rare cases is necessary to insure that the purpose of providing lost-income benefits is maintained — to replace income actually lost due to injury.

3. We now undertake to determine if the Court of Appeals erred by affirming the trial court's grant of summary judgment to Sentry. "The party seeking summary judgment bears the burden of establishing the non-existence of any genuine issue as to any material fact and

the right to a judgment as a matter of law." *Kelly v. Vargo*, 261 Ga. 422, 423 (1) (405 SE2d 36) (1991). Therefore, in this case, Sentry had the burden of proving that no genuine issue of material fact remained as to whether Vlahos could prove with reasonable certainty that, but for the accident, All Auto Parts would have paid the accrued salary. We conclude that issues of material fact remain.

First, although Sentry introduced evidence that All Auto Parts was suffering severe financial difficulty,[1] we find that Sentry failed to establish "the non-existence of any issue as to any material fact" concerning whether All Auto Parts, but for the closing necessitated by Vlahos' accident, may have become profitable and eventually paid Vlahos' accrued salary. In this regard, no evidence was offered that indicates whether All Auto Parts' financial circumstances were irreversible or were subject to change. Second, All Auto Parts' accountant testified that one of Vlahos' hopes, if the company had remained in business, had been to sell the inventory of the company in an attempt to raise enough money to pay her accrued salary. The accountant did not know the value of the inventory, and Sentry offered no evidence to demonstrate that such a plan was not viable. We therefore find that this issue precludes the grant of summary judgment to Sentry.

For the foregoing reasons, we reverse the grant of summary judgment to Sentry and remand for proceedings consistent with this opinion.

*Judgment reversed. Clarke, C. J., Hunt, P. J., Fletcher and Hunstein, JJ., concur; Benham, J., dissents.*

BENHAM, Justice, dissenting.

Being in disagreement with the approach taken by the majority opinion in resolving the issue of entitlement to Personal Injury Protection (PIP) benefits, I must respectfully dissent for the reasons given by Presiding Judge McMurray in his dissent in *Vlahos v. Sentry Ins. Co.*, 203 Ga. App. 540 (417 SE2d 180) (1992), and for the additional reasons contained herein.

We granted the writ of certiorari in this case to determine whether an employee who is continuously employed before disability and accrues income rather than receiving it is entitled to benefits for loss of income or earnings under OCGA § 33-34-4 (a) (2) (B). The trial court determined that there was no entitlement, and the Court of Appeals, in a split decision (5-4), affirmed the trial court's determination. The majority opinion of this court, while remanding the mat-

---

[1] Contrary to Vlahos' contention, the fact that All Auto Parts was suffering tremendous financial problems is relevant to whether Vlahos can prove with reasonable certainty the fact and amount of lost income, in that such evidence tends to demonstrate that the income accruing to Vlahos might not be paid to her in full or at all.

ter to the trial court for a new determination, sets out a new rule which is contrary both to the intent of the statute and to abounding precedent.

The method of proving lost income is not defined in the statute, but in case law. *Auto-Owners Ins. Co. v. Sapp*, 185 Ga. App. 661, 662 (365 SE2d 286) (1988), established what has now become a well-accepted rule for determining the issue of lost wages:

> To recover benefits for "loss of income or earnings during disability" pursuant to OCGA § 33-34-4 (a) (2) (B), an insured is required merely to establish with "reasonable certainty" the fact and amount of such lost income or earnings, and this he may accomplish *either* by showing that he previously had accepted an offer of income-generating employment for the period in question *or* by showing "a continuous pattern of employment prior to the period of disability." [Cit.]

That approach provides two separate and distinct methods of determining lost wages: (1) acceptance of income-generating employment, or (2) a showing of a continuous pattern of employment prior to the injury. Both the majority opinion of the Court of Appeals and that of this court impermissibly merge these two separate and distinct approaches into one rule by requiring the claimant to show to a reasonable degree of certainty that wages would actually have been received. This is nothing more than a profitability test, and the imposition of this additional layer of proof is directly contrary to established precedent in the area.

It is abundantly clear that the focus of the case law in this area is on entitlement to wages rather than on actual receipt of wages or the profitability of a business enterprise. Even in *Midland Auto. Ins. Co. v. West*, 175 Ga. App. 419, 421 (333 SE2d 628) (1985), where benefits were denied because the claimant was a day laborer with no promise of continued employment the court said,

> In the rare instance, such as in this case, in which the insured is employed on the date of the accident and injury but where the employment is only certain in duration as to that day, the insured is not necessarily precluded from recovery of benefits for loss of income or earnings for the length of disability. He must, however, establish with reasonable certainty his *entitlement* to benefits for loss of income or earnings during the period of his disability by showing that he had "accepted an offer of income-generating employment or has had a continuous pattern of employment prior to the pe-

riod of disability." [Cit.]

This theme of entitlement rather than actual receipt of wages or the profitability of the business enterprise is supported by the decisions allowing a finding of lost wages in *Vansant v. Allstate Ins. Co.*, 142 Ga. App. 684 (236 SE2d 858) (1977), where retirement benefits were reduced upon the death of the insured, and *American Interstate Ins. Co. v. Revis*, 156 Ga. App. 204 (274 SE2d 586) (1980), where an employment contract had been entered into but not performed.

The wisdom of this entitlement approach is readily apparent. The scheme of the No-Fault statute is to provide for wage substitution in a fast and efficient manner. *Vansant*, supra at 686. In addition, the entitlement approach is consistent with the realities of the business world where many businesses are unprofitable in their embryonic stages and are also unprofitable during economic downturns. The majority approach will allow insurance companies to question the profitability of all businesses in processing PIP claims, and the goal of the No-Fault statute will be frustrated: each claim will now be subject to a profitability analysis, the burden of which will fall on the party least likely to be able to shoulder it, which will cause interminable delay in the processing and payment of PIP benefits.

Although I, too, would reverse the judgment of the Court of Appeals, I would not impose on those seeking the payment of PIP benefits the onerous burden created in this case; I would simply hold that appellant has shown her entitlement to wages and has thereby demonstrated conclusively her entitlement to the payment of PIP benefits. I must, therefore, dissent to the judgment of the majority.

DECIDED FEBRUARY 18, 1993.

*Zipperer & Lorberbaum, Ralph R. Lorberbaum, Janet Foerrster,* for appellant.
*Karsman, Brooks & Calloway, R. Kran Riddle,* for appellee.